**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Lawyer Disciplinary Board,**
**Petitioner,**

**vs.) No. 18-0250**

**Anthony J. Zappin,**
**Respondent.**

**FILED**
**February 16, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

This is a reciprocal lawyer disciplinary proceeding against respondent Anthony J. Zappin[1] brought by the Office of Disciplinary Counsel ("ODC") pursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure.[2] The Hearing Panel Subcommittee ("HPS") of petitioner

---

[1] Mr. Zappin is a self-represented litigant. He was admitted to the West Virginia State Bar on November 23, 2010, and, therefore, is subject to the disciplinary jurisdiction of this Court.

[2] Rule 3.20 provides:

> (a) A final adjudication in another jurisdiction, whether state or federal, of misconduct constituting grounds for discipline of a lawyer or a voluntary surrender of a license to practice in connection with a disciplinary proceeding shall, for the purposes of proceedings pursuant to these rules conclusively establish such conduct. Accordingly, a Hearing Panel Subcommittee may take action without conducting a formal hearing.

> (b) Any lawyer who is a member, active or inactive, of The West Virginia State Bar against whom any form of public discipline has been imposed by the authorities of another jurisdiction, whether state or federal, or who voluntarily surrenders his or her license to practice law in connection with disciplinary proceedings in another jurisdiction, whether state or federal, shall notify the Office of Disciplinary Counsel of such action in writing within ten days thereof. Failure to notify the Office of Disciplinary Counsel shall constitute an aggravating factor in any subsequent disciplinary proceeding.

1

Lawyer Disciplinary Board ("LDB"),[3] recommended to this Court that the same punishment of disbarment that was imposed upon Mr. Zappin by the State of New York, be imposed on him in this State.[4] The ODC consented to the LDB's recommendation. Mr. Zappin objected, arguing that 1) the findings relied upon by New York in imposing discipline are fundamentally and constitutionally infirm; 2) he was denied due process in the New York disciplinary proceeding; and 3) the imposition of discipline based on findings made by a matrimonial judge under a "preponderance of the evidence" standard is unconstitutional under West Virginia law.

---

(c) Upon receiving notice that a lawyer who is a member, active or inactive, has been publicly disciplined or has voluntarily surrendered his or her license to practice law in another jurisdiction, whether state or federal, Disciplinary Counsel shall, following an investigation pursuant to these rules, refer the matter to a Hearing Panel Subcommittee for appropriate action.

(d) If the lawyer intends to challenge the validity of the disciplinary order entered in the foreign jurisdiction with a disciplinary proceeding, the lawyer must request a formal hearing and file with the Office of Disciplinary Counsel a full copy of the record of the disciplinary proceedings which resulted in imposition of the disciplinary order or the voluntary surrender of a license to practice law.

(e) At the conclusion of proceedings brought under this section, the Hearing Panel Subcommittee shall refer the matter to the Supreme Court of Appeals with the recommendation that the same discipline be imposed as was imposed by the foreign jurisdiction unless it is determined by the Hearing Panel Subcommittee that (1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

[3]The LDB is represented by Chief Lawyer Disciplinary Counsel Rachael L. Fletcher Cipoletti.

[4]Mr. Zappin was also admitted to practice in the District of Columbia, which has imposed the reciprocal punishment of disbarment on him.

This Court has now carefully considered the parties' written and oral arguments, the submitted record, and the pertinent authorities. Upon review, we find that the record and law support the recommendation of the HPS, and, accordingly, we impose the reciprocal discipline of disbarment. Because there is no substantial question of law and no prejudicial error, a memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.[5]

The factual underpinning of this case arises from Mr. Zappin's divorce from his now ex-wife, which was filed in New York in February, 2014. The primary issue for resolution in the divorce proceeding was the custody of the parties' only child, but there were also allegations of domestic violence.[6] The divorce/custody action in New York was contentious and resulted in the court imposing sanctions against Mr. Zappin. *See Zappin v. Comfort*, 49 Misc.3d 1201(A) (N.Y. Sup. Ct. Sept. 18, 2015) (unreported disposition), *aff'd,* 146 A.D.3d 575 (N.Y. App. Div. Jan. 17, 2017), *appeal dismissed*, 31 N.Y.3d 1077 (N.Y. Ct. App. Jun. 7, 2018). Mr. Zappin's conduct surrounding his filings with the New York court, his attack on the child's attorney, and his treatment of the various judges involved in his case resulted in the court finding that he had "done everything in his power to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate," behavior that "call[ed] into question his fitness to practice law." *Id*. at *2. The court's decision to sanction Mr. Zappin's conduct was upheld on appeal. *See id*.

There was a thirteen-day custody trial in the divorce/custody proceeding, during which Mr. Zappin and his now ex-wife presented witnesses and documentary evidence. At the conclusion of the trial, the New York court entered a 100-page opinion and order on February 29, 2016, granting his now ex-wife custody of the couple's child, as well as a protective order against Mr. Zappin. The court made numerous factual findings concerning Mr. Zappin's conduct throughout the proceedings, which findings established that Mr. Zappin

> had repeatedly perpetrated acts of domestic violence against his wife; had testified falsely at a custody trial; had knowingly introduced falsified evidence during the proceedings in the form of altered text messages; had presented misleading testimony through his expert witnesses; had, beginning in April 2014, engaged in acts that repeatedly demonstrated disrespect for the court and counsel, by, inter alia, flouting the judicial directives of three judges (a judge of the District of Columbia Superior Court, the original matrimonial judge and the matrimonial judge who made these findings . . . ), setting up a fake website about the attorney for the child by registering her name as a domain name and posting derogatory messages about her on it, and baselessly filing a disciplinary complaint against a court-appointed psychiatric expert witness.

---

[5] *See Lawyer Disciplinary Bd. v. Folwell*, No. 11-1279, 2012 WL 3116011 (W. Va. June 7, 2012) (memorandum decision) (concerning reciprocal discipline).

[6] According to the record, the parties engaged in litigation in both the District of Columbia and then New York.

Additionally, Supreme Court found that respondent had sent text messages to his wife, an attorney, threatening her with loss of her license to practice law and professional ruin; had made grossly offensive remarks during cell phone conversations with his then three-month-old son in which he baselessly accused his father-in-law of being a child sexual abuser who could harm the child; had engaged in frivolous and abusive litigation against his wife, her parents, and her attorneys; and had attempted to publicly defame the attorney for the child.

*In re Zappin*, 73 N.Y.S.3d 182, 183-84 (N.Y. App. Div. 2018), *denying leave to appeal*, 122 N.E.3d 566 (N.Y. 2019).

On April 21, 2016, the New York Departmental Disciplinary Committee ("NYDDC") for the First Judicial Department filed a petition seeking to have Mr. Zappin found guilty of professional misconduct pursuant to the doctrine of collateral estoppel.[7] The NYDDC alleged that the New York court's February 29, 2016, and September 18, 2015, orders entered in the divorce/custody proceeding provided "ample grounds for this Court's deeming respondent guilty of misconduct pursuant to at least seven provisions of the New York Rules of Professional Conduct[.]"[8] Specifically, the NYDDC stated that the factual issues resolved by the court in Mr. Zappin's domestic case were identical to the issues that would be decided by the NYDDC in a disciplinary proceeding. Further, it was alleged that Mr. Zappin had a full and fair opportunity to litigate all the factual issues that the court determined in his divorce/custody case. Consequently, the NYDDC requested that Mr. Zappin be precluded from "relitigating the factual findings made by Justice Cooper. [Mr. Zappin] . . . has enjoyed his 'bite at the apple' and can claim no entitlement to a *de novo* hearing on his already-adjudicated conduct." NYDDC asked for the court to find that Mr. Zappin had violated the rules set forth in the petition and refer the matter back to the Committee for a hearing on sanctions only. Notice of this petition was served on Mr. Zappin on April 22, 2016.

On June 11, 2016, Mr. Zappin filed a response in opposition to the application of collateral estoppel in his New York disciplinary proceeding, arguing that the doctrine should not be applied as there was no identity of issues and he had not had a full and fair opportunity to litigate the issues.

In an unpublished order dated October 17, 2016, the Appellate Division of the Supreme Court in the First Judicial Department, relying upon an application of collateral estoppel, found

---

[7] *See In re Dunn*, 27 N.E.3d 465, 468 (N.Y. 2015) ("[T]he doctrine of collateral estoppel has been applied to attorney disciplinary matters in the past and can continue to be applied where the necessary prerequisites have been met—i.e., where the attorney has had a full and fair opportunity to litigate in the prior proceeding.").

[8] The New York Rules of Professional Conduct identified in the petition included: Rule 8.4(b), Rule 8.4(c), Rule 8.4(d), Rule 8.4(h), Rule 3.1, Rule 3.3(a)(1) and Rule 3.3(a)(3).

4

Mr. Zappin guilty of professional misconduct.[9] The matter was referred to a referee to consider mitigation and aggravation evidence and to recommend an appropriate sanction. *See In re Zappin*, 73 N.Y.S.3d at 187.

Thereafter, on December 16, 2016, a disciplinary hearing on the sanctions for Mr. Zappin's professional misconduct was held before a referee in which he presented mitigation evidence but did not testify.

Following this hearing, the NYDDC recommended that Mr. Zappin be disbarred, stating that "[t]he duration, ferocity and maliciousness of this volatile attorney's misconduct make manifest his present unfitness to practice law." Mr. Zappin opposed the recommended sanction of disbarment; however, on August 3, 2017, the referee rejected Mr. Zappin's mitigation evidence, finding that

> Mr. Zappin's numerous instances of misbehavior may have all occurred in the same litigation, but it was extensive and unbridled. He accused and abused three judges in two states, lied continuously, condoned others' perjury, altered documents, physically abused his wife, and more, during years of litigation. There are no significant mitigation circumstances, but Mr. Zappin's lack of remorse and evident lack of respect for the judicial process are serious aggravating factors.

The referee recommended that Mr. Zappin be disbarred.

On August 30, 2017, the NYDDC moved the Supreme Court of the State of New York Appellate Division: First Judicial Circuit to affirm the findings of the referee and the recommended sanction of disbarment. Mr. Zappin opposed the motion, arguing that it was unfair to discipline him pursuant to collateral estoppel. He also argued that he was not given notice and a full and fair opportunity to be heard in his divorce/custody proceeding. On March 8, 2018, the New York Supreme Court, Appellate Division rejected Mr. Zappin's arguments and upheld the

---

[9] The New York court found Mr. Zappin violated the following New York Rules of Professional Conduct:

> rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); rule 8.4(d) (conduct prejudicial to the administration of justice); rule 3.1 (frivolous litigation); rule 3.3(a)(1) (knowingly make a false statement of fact or law to a tribunal); rule 3.3(a)(3) (knowingly use or offer false evidence); rule 3.3(f)(2) (undignified or discourteous conduct before a tribunal); and rule 8.4(h) (other conduct adversely reflecting on fitness as a lawyer)[.]

*In re Zappin*, 73 N.Y.S.3d at 184.

referee's recommended sanction of disbarment. This decision was upheld on appeal. *See In re Zappin*, 73 N.Y.S.3d at 182.

On March 8, 2018, Mr. Zappin notified the West Virginia State Bar of his disbarment in New York. On March 21, 2018, the ODC filed a "Notice of Reciprocal Disciplinary Action Pursuant to Rule 3.20 of the Rules of Lawyer Disciplinary Procedure." Mr. Zappin requested a formal hearing, which occurred over two days.[10] After the hearing, the HPS recommended that reciprocal punishment be imposed and Mr. Zappin be disbarred. As previously mentioned, Mr. Zappin objected to the recommendation of the HPS and the case was set for oral argument.

As set forth in syllabus point three of *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994):

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Although we defer to the LDB's factual findings and respectfully consider its recommendations, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

In accordance with our well-established law governing review of reciprocal disciplinary cases, "[p]ursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, a final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disciplinary proceedings in this state." Syl. Pt. 1, *Law. Disciplinary Bd. v. Post*, 219 W. Va. 82, 631 S.E.2d 921 (2006). Further,

> [u]nder the provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, an attorney's right to challenge the disciplinary action of a foreign jurisdiction is limited to the following four grounds: (1) the procedure followed in the other jurisdiction violated due process; (2) there was a total infirmity of proof of misconduct; (3) imposition of the same discipline would

---

[10] Mr. Zappin was represented by counsel, S. Benjamin Bryant, Esq., in the disciplinary hearing; however, Mr. Bryant later withdrew from his representation of Mr. Zappin.

result in a grave injustice; or (4) the misconduct warrants a substantially different type of discipline.[11]

*Post*, 219 W. Va. at 82-83, 631 S.E.2d at 921-22, Syl. Pt. 3 (footnote added). Finally, the Court held that "[t]he provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure require the imposition of the identical sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established." *Post*, 219 W. Va. at 83, 631 S.E.2d at 922, Syl. Pt.4.

Mr. Zappin's challenges, set forth in greater detail *supra*, are best categorized under *Post* as: 1) the New York proceedings violated his right to Due Process, and 2) there was a total infirmity of proof of misconduct. *See id*. at 82-83, 631 S.E.2d at 921-22, Syl. Pt. 3. Neither challenge has merit.

First, Mr. Zappin claims that the evidence offered against him in the New York proceeding was infirm, and thus constituted insufficient proof of misconduct. He attacks the factual findings in his New York divorce/custody case, claiming that the facts are in error and contrary to the evidence that he presented. He also argues that he presented evidence during his hearing before the HPS, which evidence demonstrates the infirmity of the New York findings. Succinctly stated, Mr. Zappin's attempt to relitigate the factual findings of the New York courts and have this Court overturn those findings is simply not properly before us. *See id*. at 82, 631 S.E.2d at 921, Syl. Pt. 1. Instead, the only issue before us is whether there was "a total infirmity of proof of misconduct." *Id*. at 82-83, 631 S.E.2d at 921-22, Syl. Pt. 3. The HPS found that the facts developed in the New York custody proceedings established misconduct committed by Mr. Zappin involving dishonesty, fraud, deceit, or misrepresentation, and abusive litigation tactics. We agree and find no "total infirmity" of proof of misconduct in the New York proceeding. *See id*.

In connection with his argument concerning the alleged total infirmity of proof of misconduct, Mr. Zappin also contends that imposing reciprocal discipline is "unconstitutional" under West Virginia law because New York's burden of proof in its attorney disciplinary proceeding was a "mere 'preponderance of the evidence' standard" and West Virginia requires a clear and convincing burden of proof.[12]

Mr. Zappin provides no legal authority to support his position that reciprocal discipline based upon a foreign state's findings of fact using the preponderance of the evidence standard is unconstitutional under the West Virginia Constitution. Conversely, the LDB, relying on authority from other jurisdictions, argues that imposition of reciprocal discipline in West Virginia is

---

[11] We note that Mr. Zappin does not offer any argument concerning the HPS's finding that he "failed to offer credible evidence that the imposition of disbarment as imposed by New York by the West Virginia Supreme Court would result in a grave injustice or that a substantially different type of discipline would be imposed in West Virginia for the proven misconduct." *See Post*, 219 W. Va. at 82-83, 631 S.E.2d at 921-22, Syl. Pt. 3

[12] He further argues that the burden of proof in his divorce/custody case, which formed the basis for his New York disbarment, was a preponderance of the evidence.

appropriate even though the burden of proof for the disciplinary proceedings here is higher than the burden of proof in New York. *See In re Benjamin*, 698 A.2d 434, 440 (D.C. 1997) (acknowledging New York had a lower burden of proof for lawyer disciplinary cases than the clear and convincing standard used by the District of Columbia, but concluding that "'[o]ur role in reciprocal discipline cases differs from that in disciplinary matters originating in our own jurisdiction.' *In re Velasquez*, 507 A.2d 145, 146 (D.C. 1986). Under principles of collateral estoppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction, even though the underlying sanction may have been based on a different rule of procedure or standard of proof. Second, a rule that automatically established an infirmity of proof in those cases in which proof of misconduct in another jurisdiction was by a standard lower than clear and convincing evidence would unfairly insulate attorneys admitted in those jurisdictions from reciprocal discipline. Such a *per se* rule would force us to ignore both the nature of the misconduct . . . and the proof adduced in the other jurisdiction.") (some citations omitted); *Att'y Grievance Comm'n of Md. v. Sabghir*, 710 A.2d 926, 933 (Md. 1998) ("Nor does the fact that New York's standard of proof of attorney misconduct is lower than that required in Maryland cause this Court to reject the factual findings made by the New York court."). Based upon the foregoing, we find Mr. Zappin's argument on this issue to be legally unsound and without merit.

Second, Mr. Zappin argues that his due process rights were violated in the New York proceedings by application of the collateral estoppel doctrine in his lawyer disciplinary case. It is significant to note at the outset that Mr. Zappin has litigated and relitigated this alleged error in New York, and the New York courts have found that his due process rights were not violated. *See In re Zappin*, 73 N.Y.S.3d at 185-86. New York's decision to use collateral estoppel in the disciplinary case was based upon a determination that Mr. Zappin had a full and fair opportunity in his divorce/custody trial to litigate these issues. *See id.* at 185. Moreover, West Virginia is not the proper venue to review New York's interpretation of its law governing disciplinary proceedings conducted in New York, which undeniably allows the use of collateral estoppel. Instead, our review is limited to whether the procedure followed in New York violated Mr. Zappin's due process rights. In this regard, the HPS found,

> Respondent acknowledged to the Hearing Panel Subcommittee that he had notice of the disciplinary charges and an opportunity to litigate, albeit unsuccessfully, the application of collateral estoppel. Respondent acknowledged in his own testimony that he appeared with counsel at the New York disciplinary proceeding, that he was able to present evidence, that his counsel had the opportunity to cross examine and elicit direct testimony from witnesses, and that he was given the opportunity to testify on his own behalf. Respondent testified that he had the opportunity to and, his counsel did, file briefs post-hearing. Respondent testified that after the referee's opinion recommending disbarment was issued, he had the opportunity to, and his counsel did, file a motion in opposition of the referee's recommendation. Respondent was also permitted to fully exhaust his appellate rights. New York procedures as applied to this matter comport with the requirements of due process of law.

(citations to transcript omitted). Our review of the facts and law on this issue reveal that the HPS correctly found that Mr. Zappin has failed to show any violation of his due process rights in the course of the New York proceedings.

Based upon the foregoing, the Court concludes that Mr. Zappin has failed to establish any of the four grounds set forth in *Post* for challenging the discipline imposed by New York. S*ee* Syl. Pts. 3 and 4, *Po*st, 219 W. Va. at 82-83, 631 S.E.2d at 921-22. In accordance with *Post*, and the reciprocal discipline provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, this Court is required to impose the same sanction that was imposed by New York, and therefore, Mr. Zappin is disbarred from the practice of law.

The Clerk of the Court is directed to issue the mandate forthwith.

Disbarment ordered.

**ISSUED:** February 16, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

9