[27 NE3d 465, 3 NYS3d 751]

In the Matter of JILL A. DUNN, an Attorney, Appellant. COMMITTEE ON PROFESSIONAL STANDARDS, Respondent.

Argued January 15, 2015; decided February 24, 2015

**POINTS OF COUNSEL**

*Steinberg & Cavaliere, LLP*, White Plains (*Benjamin Zeler-myer* and *Steven A. Coploff* of counsel), for appellant. The Appellate Division erred in giving collateral estoppel effect to a nonfinal decision of a United States magistrate judge which could not be appealed. (*Matter of Levy*, 37 NY2d 279; *Matter of Keogh*, 17 NY2d 479; *Matter of Donegan*, 282 NY 285; *Matter of McGrath v Gold*, 36 NY2d 406; *Vavolizza v Krieger*, 33 NY2d 351; *S.T. Grand, Inc. v City of New York*, 32 NY2d 300; *Webb v Buckelew*, 82 NY 555; *Brown v Cleveland Trust Co.*, 233 NY 399; *Ashe v Swenson*, 397 US 436; *Slater v American Min. Spirits Co.*, 33 NY2d 443.)

*Monica A. Duffy, Committee on Professional Standards*, Albany (*Michael G. Gaynor* and *Alison M. Coan* of counsel), for respondent. The Third Department properly applied collateral estoppel to appellant's disciplinary case. (*Matter of Osborne*, 1 AD3d 31; *Matter of Flannery*, 274 AD2d 940; *Matter of Babigian*, 247 AD2d 817; *Matter of Kramer*, 235 AD2d 87; *Matter of Mac Truong*, 2 AD3d 27; *Ryan v New York Tel. Co.*, 62 NY2d 494; *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659; *Gilberg v Barbieri*, 53 NY2d 285; *Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65; *Matter of Yao*, 231 AD2d 346.)

**OPINION OF THE COURT**

Per Curiam.

The issue presented by this appeal is whether collateral estoppel applies in respondent attorney's disciplinary proceeding to bar her from challenging the findings of a United States magistrate judge made in the context of a sanctions motion. Under

the circumstances presented here, we hold that respondent did not have a full and fair opportunity to litigate the issue of her alleged misconduct.

The underlying federal action is one that was commenced by the Securities and Exchange Commission (SEC) against, among others, David Smith and the investment services firm of McGinn, Smith & Co., Inc., alleging that they had defrauded investors in violation of federal securities laws. In connection with that action, the SEC obtained a temporary restraining order (TRO) freezing Smith's assets and those of his wife, Lynn, including the David L. and Lynn A. Smith Irrevocable Trust (*see Securities & Exch. Commn. v Smith*, 798 F Supp 2d 412, 417 [ND NY 2011]). The trust had been established for the benefit of the Smiths' adult children.

The trust, represented by respondent Dunn, was granted permission to intervene in the SEC action (*see Securities & Exch. Commn. v McGinn, Smith & Co., Inc.*, 752 F Supp 2d 194, 199 n 3 [ND NY 2010]). In a July 7, 2010 order, the court granted the trust's motion to vacate the TRO as against it, concluding that David Smith did not have a beneficial interest in the trust (*see id.* at 218-219). The trust's assets were therefore unfrozen.

On August 3, 2010, the SEC moved for reconsideration on the basis of newly discovered evidence—it had come to their attention that Smith did, in fact, have a beneficial interest in the trust. Specifically, they had discovered the existence of an annuity agreement, dated August 31, 2004, requiring the trust to disburse annual payments to the Smiths in the amount of $489,932, beginning in September 2015. In support of the motion, SEC attorneys asserted that during a July 22, 2010 telephone call, respondent Dunn had disclosed the existence of the annuity agreement. At the SEC's request, the former trustee produced a copy of the annuity agreement on July 27, 2010.

Dunn submitted a declaration in opposition to the SEC's motion, dated September 3, 2010, in which she maintained that she was neither in possession, nor even aware, of the existence of the annuity agreement prior to July 27, 2010, when it was produced by the former trustee. Dunn disputed the SEC's assertion that she had mentioned the agreement during the telephone

call, but stated that she had referred to the trust at issue as a "private annuity trust."*

On November 15, 2010, the evening before a scheduled hearing on the reconsideration motion, Dunn submitted a declaration correcting her prior statements. Dunn stated that, while preparing for the hearing, she discovered that she had an email from the trustee dated July 21, 2010, to which he had attached documents referencing the annuity agreement. She explained that she did not recall having seen those documents at the time she had prepared the prior declaration and that her attention had been diverted by the trust's real estate closing, other client matters and personal issues. The following day, Dunn testified before the Magistrate at a hearing on the reconsideration motion and reiterated both that she had not made reference to any such agreement in the July 22 phone call with the SEC and that she had no knowledge of the annuity agreement prior to July 27.

The Magistrate granted reconsideration, granted the SEC's motion for a preliminary injunction against the trust and granted the SEC leave to move for sanctions against, among others, Dunn (*see Securities & Exch. Commn. v Wojeski*, 752 F Supp 2d 220, 233 [ND NY 2010]). The Magistrate credited the testimony of the SEC attorney, but characterized Dunn's testimony as "inconsistent and contradictory" (752 F Supp 2d at 226). The Magistrate found that Dunn had indeed disclosed the existence of the annuity agreement in the July 22, 2010 telephone conversation with the SEC attorneys (*see* 752 F Supp 2d at 228). The Magistrate further observed that Dunn had breached her continuing duty to produce the annuity agreement when she first became aware of it (*see* 752 F Supp 2d at 227-228).

In January 2011, the SEC moved for sanctions against Dunn. Each side submitted memoranda of law, but no hearing was held on the motion. The Magistrate granted the motion in part, finding that the SEC had established by clear and convincing evidence that the representation in Dunn's September 3 declaration, that she was unaware of the existence of the annuity agreement until July 27, was knowingly false (*see Securities &*

---

* Dunn pointed out that David Smith had characterized the trust as a private annuity trust in his 2004 transmittal letter to the initial trustee. This argument was made in connection with her assertion that the SEC could have discovered the existence of the annuity agreement through the exercise of due diligence prior to July 7.

*Exch. Commn. v Smith*, 798 F Supp 2d at 430). The filing of the corrective declaration on the eve of the hearing on the reconsideration motion was deemed to have "mitigated only minimally" the act of filing the false declaration (798 F Supp 2d at 441-442). The Magistrate ordered that Dunn disgorge the disbursement she had received from the trust subsequent to July 21, determined that the appropriate sanction was a public admonishment and directed the clerk of the court to forward a copy of the decision to the Committee on Professional Standards for the Third Department (798 F Supp 2d at 441-442).

In December 2011, the Committee filed a petition consisting of a single charge alleging that Dunn had "engaged in fraudulent conduct prejudicial to the administration of justice adversely reflecting on her fitness as a lawyer by making false statements under oath in written declarations filed in federal court" in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rules 8.4 (c), (d) and (h) and 3.3 (a) (1). The basis of the complaint was essentially the text of the Magistrate's sanctions opinion.

Dunn filed an answer asserting that the Magistrate's sanctions order should not be given preclusive effect and asking that the proceeding be held in abeyance pending the outcome of her appeal to the Second Circuit. The Third Department granted a series of adjournments for over a year while the appeal was sub judice. In March 2013, the Second Circuit dismissed Dunn's appeal, finding that it lacked jurisdiction over the nonfinal sanctions order, which would be reviewable on appeal from the final order in the underlying action (*Securities & Exch. Commn. v Smith*, 710 F3d 87, 94 [2d Cir 2013]). To date, there is no final order in the federal securities action.

The Committee then moved for an order declaring that no factual issues were raised with respect to Dunn's misconduct and fixing a time at which Dunn could be heard in mitigation. Dunn raised several arguments in opposition, including that she was not given a full and fair opportunity to contest the Magistrate's decision. The Appellate Division granted the Committee's motion, finding that collateral estoppel applied to the Magistrate's sanctions order, and found Dunn guilty of the charged misconduct. After hearing evidence in mitigation, the Court determined that censure was the appropriate penalty (111 AD3d 1019, 1020 [3d Dept 2013]). This Court granted Dunn leave to appeal (22 NY3d 861 [2014]), and we now reverse.

It is well settled that "collateral estoppel precludes a party from relitigating 'an issue which has previously been decided against [her] in a proceeding in which [she] had a fair opportunity to fully litigate the point' " (*Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985] [citation omitted]). We have observed that "collateral estoppel is a flexible doctrine" and that a determination of whether a party had a full and fair opportunity to litigate in the prior proceeding requires a "practical inquiry into the realities of [the] litigation" (*Gilberg v Barbieri*, 53 NY2d 285, 292 [1981] [internal quotation marks and citation omitted]; *Auqui v Seven Thirty One Ltd. Partnership*, 22 NY3d 246, 255 [2013]). The party seeking to invoke collateral estoppel has the burden to show the identity of the issues, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate (*see Kaufman*, 65 NY2d at 456).

This case is distinguishable from *Matter of Levy* (37 NY2d 279, 281 [1975]), where we determined that it was neither unreasonable nor unfair to impose collateral estoppel in a disciplinary proceeding after the attorney had been convicted of a criminal offense. There, we held that the attorney would not be permitted to relitigate the issue of guilt after he was convicted following a criminal trial, at "which rigorous safeguards were imposed to insure against an unjust conviction" (*Levy*, 37 NY2d at 281).

By contrast, the determination here was made on papers—without cross-examination or the opportunity to call witnesses. Although Dunn did testify before the Magistrate, it was in the context of the motion for reconsideration and was for the purpose of determining whether the trust's assets should be unfrozen. Essentially, the issue before the Magistrate there was whether the annuity agreement was new evidence that the SEC could not have discovered in a timely fashion through the exercise of due diligence. While the issue of whether Dunn had made false statements in her written declaration concerning her prior knowledge of that agreement may have been relevant, it was certainly not the focus of the hearing on the motion. The cursory nature of the sanctions proceeding itself failed to provide a full and fair opportunity to litigate the issue.

Contrary to the Committee's argument that the inability to invoke collateral estoppel would cause extensive delay in attorney disciplinary proceedings, it is not necessary to await a final judgment in the underlying action. Rather, the Committee

remains free to prove the alleged misconduct at issue. Further, we see no indication that the situation presented here will recur with any frequency. Moreover, as noted above, the doctrine of collateral estoppel has been applied to attorney disciplinary matters in the past and can continue to be applied where the necessary prerequisites have been met—i.e., where the attorney has had a full and fair opportunity to litigate in the prior proceeding.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to that Court for further proceedings in accordance with this opinion.

Chief Judge LIPPMAN and Judges READ, PIGOTT, RIVERA and ABDUS-SALAAM concur; Judges STEIN and FAHEY taking no part.

Order reversed, with costs, and matter remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.