Bonner v Lynott (2022 NY Slip Op 02175)





Bonner v Lynott


2022 NY Slip Op 02175


Decided on March 31, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 31, 2022

532821
[*1]Kim M. Bonner, Appellant,
v
Patricia Lynott, as Representative of the Estate of William Wittlin, Deceased, Respondent.

Calendar Date:February 10, 2022

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Schlather, Stumbar, Parks & Salk, LLP, Ithaca (Raymond M. Schlather of counsel), for appellant.
Smith, Sovik, Kendrick & Sugnet, PC, Syracuse (Kevin E. Hulslander of counsel), for respondent.



McShan, J.
Appeal from an order of the Supreme Court (McBride, J.), entered January 5, 2021 in Tompkins County, which granted defendant's motion for summary judgment dismissing the complaint.
Plaintiff was appointed to a residency program at the State College of Veterinary Medicine at Cornell University for a one-year term beginning in July 2013. In December 2013, plaintiff was placed on a three-month period of probation due to concerns with her performance. Despite some improvement, plaintiff's performance issues persisted, and her probationary period was extended for an additional three months. Shortly thereafter, plaintiff took a seven-week leave of absence upon the recommendation of her treating psychiatrist, William Wittlin.
Following her return from leave, plaintiff began a rotation under the supervision of Elizabeth Buckles, an associate clinical professor at Cornell's College of Veterinary Medicine. During a subsequent meeting with Buckles to discuss her performance, plaintiff allegedly displayed certain erratic and concerning behavior. The next day, Buckles expressed her concerns regarding plaintiff to Gabriel Tornusciolio, a psychologist at Cornell's Faculty and Staff Assistance Program. Tornusciolio, in turn, contacted Wittlin. During the conversation that ensued, Tornusciolio provided a summary of plaintiff's behavior as reported to him. In response, Wittlin informed Tornusciolio that he was "aware of [plaintiff's] deterioration," that plaintiff "was a mess last time [he] saw her" and that he was unaware of any suicidal behavior or ideation. Following the phone call, Tornusciolio sent an email to Buckles and Mary Elizabeth Jordan, the Director of Human Resources for Cornell's College of Veterinary Medicine, informing them of the substance of his conversation with Wittlin.
Ultimately, a meeting was held to discuss plaintiff's performance and whether she should be reappointed to the residency program for a second year. Seven faculty members, including Buckles, were present at the meeting. Following the meeting, the seven faculty members issued written votes as to whether to renew plaintiff's appointment for a second year. Five of the seven members voted to deny reappointment to the program based on plaintiff's inability to complete her duties in a timely manner. The results of the vote were then submitted to the department chair, who accepted the vote. Plaintiff was later informed of the decision denying reappointment by letter dated September 10, 2014.
Plaintiff filed a complaint with the State Division of Human Rights (hereinafter SDHR) for unlawful discrimination based upon her claimed mental disability, but that complaint was dismissed upon the finding that there was no probable cause to conclude that Cornell had engaged in any unlawful discriminatory practices. She then commenced a CPLR article 78 proceeding alleging that the decision not to reappoint her was arbitrary and capricious and constituted a denial of due process[*2], which Supreme Court (Rumsey, J.) dismissed. Plaintiff thereafter commenced this action alleging a breach of physician-patient confidentiality and medical malpractice. Prior to the completion of discovery and before any depositions had been conducted, Wittlin moved for summary judgment dismissing the complaint.[FN1] Supreme Court (McBride, J.) granted the motion, finding that the information disclosed by Wittlin was not confidential and that plaintiff failed to raise a triable issue of fact as to whether she sustained any damages as a result of the alleged breach of confidentiality. Plaintiff appeals.
Pursuant to CPLR 4504 (a), a physician may not "disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity," unless the patient waives the privilege. "The privilege applies not only to information orally communicated by the patient, but also to information ascertained by observing the patient's appearance and symptoms, unless those factual observations would be obvious to lay observers" (Chanko v American Broadcasting Cos. Inc., 27 NY3d 46, 53 [2016]; see Dillenbeck v Hess, 73 NY2d 278, 284 [1989]). Although there is no private cause of action pursuant to CPLR 4504 (see Burton v Matteliano, 81 AD3d 1272, 1275 [2011], lv denied 17 NY3d 703 [2011]; Waldron v Ball Corp., 210 AD2d 611, 614 [1994], lv denied 85 NY2d 803 [1995]; see generally Lightman v Flaum, 97 NY2d 128, 136-137 [2001], cert denied 535 US 1096 [2002]), a patient may maintain a cause of action for breach of confidentiality against his or her physician resulting from the unauthorized disclosure of medical information (see Chanko v American Broadcasting Cos. Inc., 27 NY3d at 53; Razzano v Goldman, 178 AD3d 866, 867 [2019]; MacDonald v Clinger, 84 AD2d 482, 485-486 [1982]). "The elements of a cause of action for breach of physician-patient confidentiality are: (1) the existence of a physician-patient relationship; (2) the physician's acquisition of information relating to the patient's treatment or diagnosis; (3) the disclosure of such confidential information to a person not connected with the patient's medical treatment, in a manner that allows the patient to be identified; (4) lack of consent for that disclosure; and (5) damages" (Chanko v American Broadcasting Cos. Inc., 27 NY3d at 53-54; accord Razzano v Goldman, 178 AD3d at 867).[FN2] Upon her motion for summary judgment, defendant bore the burden of making a prima facie showing that plaintiff will be unable to establish at least one of these elements (see Razzano v Goldman, 178 AD3d at 867-868; see generally James v Flynn, 132 AD3d 1214, 1215 [2015]; Schrowang v Biscone, 128 AD3d 1162, 1163 [2015]).
Here, there is no dispute that a physician-patient relationship existed between Wittlin and plaintiff, that the information disclosed was acquired during Wittlin's treatment of plaintiff and that plaintiff did not consent [*3]to such disclosure. With regard to the remaining elements, Supreme Court first found that the information disclosed by Wittlin was not "confidential" inasmuch as it was already known by Buckles, Tornusciolio and Jordan. We cannot agree. Although some or all of these individuals may have already known that plaintiff was being treated by Wittlin due to the fact that her leave of absence was supported by a physician's note signed by him,[FN3] they were not aware that Wittlin was of the professional medical opinion that plaintiff's mental health condition was deteriorating. Accordingly, defendant failed to make a prima facie showing that no confidential information had been disclosed by Wittlin (see Razzano v Goldman, 178 AD3d at 868).
We also disagree that defendant established, as a matter of law, that plaintiff failed to demonstrate any cognizable damages that were proximately caused by Wittlin's alleged breach of confidentiality. Initially, plaintiff's claimed damages are not, as defendant argues, limited to those related to the decision not to reappoint her. The complaint, as amplified by the bill of particulars, alleges that plaintiff suffered mental distress and related emotional harm as a direct result of the disclosure of her confidential medical information. Because a breach of physician-patient confidentiality is actionable as a tort (see Burton v Matteliano, 81 AD3d at 1274; Doe v Community Health Plan—Kaiser Corp., 268 AD2d 183, 187 [2000]; Tighe v Ginsberg, 146 AD2d 268, 271 [1989]), plaintiff may recover for emotional harm so long as "the mental injury is a direct, rather than a consequential, result of the breach and . . . the claim possesses some guarantee of genuineness" (Ornstein v New York City Health & Hosps. Corp., 10 NY3d 1, 6 [2008] [internal quotation marks and citation omitted]; see Fox v Mark, 181 AD3d 560, 564 [2020], lv denied 35 NY3d 917 [2020]). Although defendant contends that plaintiff will be unable to establish at trial that she sustained any actual damages as a direct result of Wittlin's breach of confidentiality, "it is well settled that a party moving for summary judgment must affirmatively establish the merits of its cause of action or defense and does not meet its burden by noting gaps in its opponent's proof" (Miller v Miller, 189 AD3d 2089, 2091 [2020]; see Burdick v Tonoga, Inc., 191 AD3d 1220, 1223 [2021]; O'Connor v Aerco Intl., Inc., 152 AD3d 841, 842-843 [2017]). Because this is precisely what defendant did in seeking summary judgment with regard to this aspect of the claimed damages, she did not satisfy her burden of establishing the absence of any such causal connection as a matter of law (see Miller v Miller, 189 AD3d at 2093; Razzano v Goldman, 178 AD3d at 868; compare Cleveland v Perry, 175 AD3d 1017, 1021 [2019]).
Plaintiff's complaint also seeks both economic and noneconomic damages arising from the decision not to reappoint her as a second-year resident. Such damages are premised upon the [*4]claim that her termination from the residency program was caused by Wittlin's disclosure of her confidential medical information. Contrary to defendant's contention, plaintiff is not precluded under principles of collateral estoppel from relitigating this issue.
Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party
. . ., whether or not the tribunals or causes of action are the same" (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]; see Matter of Dunn, 24 NY3d 699, 704 [2015]; Matter of Best Payphones, Inc. v Public Serv. Commn. of the N.Y., 192 AD3d 1416, 1420 [2021], lvs denied 37 NY3d 914 [2021]). "The doctrine applies only where the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the party who is being estopped had a full and fair opportunity to litigate the issue in the earlier action" (Simmons v Trans Express, Inc., 37 NY3d 107, 112 [2021] [internal quotation marks and citations omitted]). "While issue preclusion may arise from the determinations of administrative agencies, in that context the doctrine is applied more flexibly, and additional factors must be considered by the court. These additional requirements are often summed up in the beguilingly simple prerequisite that the administrative decision be 'quasi-judicial' in character" (Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271, 276 [1988] [citations omitted], cert denied 488 US 1005 [1989]; see ABN AMRO Bank, N.V. v MBIA Inc., 17 NY3d 208, 226 [2011]). To that end, "among the factors bearing on whether an administrative decision is 'quasi-judicial' are whether the procedures used in the administrative proceeding . . . were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired" (Jeffreys v Griffin, 1 NY3d 34, 40-41 [2003] [internal quotation marks and citation omitted]; accord Auqui v Seven Thirty One Ltd. Partnership, 22 NY3d 246, 255 [2013]). The party seeking to invoke collateral estoppel has the burden of showing the identity of the issue, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate (see Matter of Dunn, 24 NY3d at 704; Buechel v Bain, 97 NY2d 295, 304 [2001], cert denied 535 US 1096 [2002]).
The central issue before SDHR was whether Cornell engaged in unlawful discrimination based on plaintiff's claimed mental disability when it terminated her from the residency program. SDHR determined that there was no probable cause to conclude that Cornell had engaged in the complained-of discriminatory conduct and, in so ruling, specifically found that there was "no evidence that [the] decision to dismiss [plaintiff] from the program [was] motivated by her disability." SDHR further found [*5]that Cornell had a legitimate, nondiscriminatory reason for its decision not to reappoint plaintiff to the residency program, namely, her unsatisfactory job performance. Even assuming that these factual determinations are dispositive of plaintiff's current claim that the disclosure of confidential information concerning her mental health played a role in the decision not to reappoint her (cf. DiCoby v Syracuse Univ., 191 AD3d 425, 426 [2021], lv denied 37 NY3d 903 [2021]; Williams v New York City Tr. Auth., 171 AD3d 990, 992-993 [2019]), we find that plaintiff sustained her burden of establishing that she did not have a full and fair opportunity to litigate the issue before SDHR.
Plaintiff alleged, in both the complaint in this action and her affidavit in opposition to defendant's summary judgment motion, that it was not until June 2015 that she first learned —through documents submitted in connection with the CPLR article 78 proceeding — that Wittlin had disclosed her confidential medical information. Defendant does not dispute this. Thus, at the time that she filed her complaint with SDHR, plaintiff had no knowledge of Wittlin's breach of confidentiality. Plaintiff therefore had no opportunity or ability to utilize this evidence in her attempt to show that the decision not to reappoint her was motivated by her disability and that the contrary explanation provided by Cornell was a pretext. Under these circumstances, it simply cannot be said that "the facts . . . were adequately tested, and . . . the issue was fully aired," during the proceeding before SDHR (Auqui v Seven Thirty One Ltd. Partnership, 22 NY3d at 255 [internal quotation marks and citations omitted]).[FN4] Furthermore, although not dispositive, it is significant to note that SDHR's determination was made on the papers, without cross-examination or the opportunity to call witnesses (see Matter of Dunn, 24 NY3d at 704; ABN AMRO Bank, N.V. v MBIA Inc., 17 NY3d at 226-227), and that petitioner was not represented by counsel during the proceeding (see Matter of Kaori [Omar J.—Shalette S.], 144 AD3d 911, 913-914 [2016]; Matter of Russo v Irwin, 49 AD3d 1039, 1042 [2008]).
Nor is plaintiff precluded from raising this issue as a result of the determination rendered in the CPLR article 78 proceeding. Supreme Court (Rumsey, J.), after acknowledging the limited scope of review in matters involving the administrative decisions of institutions of higher learning (see Gertler v Goodgold, 107 AD2d 481, 487 [1985], affd 66 NY2d 946 [1985]), dismissed the petition on the ground that Cornell's decision not to reappoint plaintiff to a second year of residency neither violated plaintiff's contractual rights nor was made in violation of Cornell's rules or policies. Although the court went on to note, "in any event," that Cornell had a rational basis for not reappointing plaintiff to the residency program for a second year, this comment "was dicta and, as such, is not entitled to preclusive effect[*6]" (Pollicino v Roemer & Featherstonhaugh, 277 AD2d 666, 668 [2000]; see Matter of B.Z. Chiropractic, P.C. v Allstate Ins. Co., 197 AD3d 144, 155 [2021]; Sherb v Monticello Cent. Sch. Dist., 163 AD3d 1130, 1132 [2018]; Chiarini v County of Ulster, 9 AD3d 769, 770 [2004]). For these reasons, we conclude that plaintiff is not barred from litigating the issue of whether the decision not to reappoint her was caused, in whole or in part, by Wittlin's disclosure of her confidential medical information.
Turning to the merits of that issue, defendant proffered the affidavits of Buckles, Tornusciolio and Jordan, each of whom attested that they did not disclose the information obtained from Wittlin with anyone else at the school, including any of the remaining faculty members who voted against reappointing plaintiff to the residency program for a second year. Defendant also supplied the affidavit of a co-director of the residency program, who averred that at no time during the meeting was there any discussion of plaintiff's mental health or her treatment with Wittlin. Interestingly, this individual does not affirmatively state that, at the time of the vote on plaintiff's reappointment, she was unaware of the confidential information conveyed by Wittlin. Nor did defendant submit affidavits from the remaining panel members concerning whether they had learned of such information at the time their votes were cast. The motion for summary judgment was made prior to the completion of discovery, and plaintiff therefore has not had an adequate opportunity to ascertain — through means such as deposing the remaining panel members — whether those individuals had acquired any of the confidential information disclosed by Wittlin (see CPLR 3212 [f]; Gagnon v Village of Cooperstown, N.Y., 189 AD3d 1724, 1728-1729 [2020]; Titus v Van Houter, 182 AD3d 755, 756-757 [2020]). Accordingly, defendant was not entitled to summary judgment dismissing the breach of confidentiality cause of action.
Finally, to the extent that plaintiff's brief can be read as advancing a challenge to the dismissal of her malpractice cause of action, we find such argument to be unavailing. A claim sounds in medical malpractice when the challenged conduct "constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (Davis v South Nassau Communities Hosp., 26 NY3d 563, 580-581 [2015] [internal quotation marks and citations omitted]; accord Scott v Uljanov, 74 NY2d 673, 674-675 [1989]). Here, the gravamen of plaintiff's complaint is not Wittlin's malpractice in furnishing medical treatment to her, but rather Wittlin's failure in fulfilling his independent duty not to disclose confidential information without plaintiff's consent. Inasmuch as Wittlin's alleged breach of this duty "did not arise during the process in which [he] was utilizing the skills which he had been taught in examining, diagnosing, treating or caring for
. .[*7]. plaintiff as his patient" (Tighe v Ginsberg, 146 AD2d at 271; see Weiner v Lenox Hill Hosp., 88 NY2d 784, 787-788 [1996]; compare Bleiler v Bodnar, 65 NY2d 65, 72 [1985]), the cause of action for malpractice was properly dismissed.
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion for summary judgment dismissing the breach of physician-patient confidentiality cause of action; motion denied to that extent; and, as so modified, affirmed.



Footnotes

Footnote 1: Wittlin passed away while the motion was pending and defendant, as representative of Wittlin's estate, was substituted as the named defendant in this action.

Footnote 2: We note that "[t]he physician-patient privilege, together with its concomitant duty of confidentiality, belongs to the patient and is not terminated by death" (Chanko v American Broadcasting Cos. Inc., 27 NY3d at 53; see McMahon v New York Organ Donor Network, 161 AD3d 680, 681-682 [2018]).

Footnote 3: Notably, in support of the motion for summary judgment, defendant did not proffer Wittlin's note or otherwise set forth the general content thereof. Consequently, there is no basis to conclude — and defendant does not allege — that any confidential medical information had been disclosed in the note beyond the fact that plaintiff was treating with Wittlin.

Footnote 4: Because a complainant's "factual showing must be accepted as true on a probable cause determination" (Matter of Doin v Continental Ins. Co., 114 AD2d 724, 725-726 [1985]; accord Matter of Majchrzak v New York State Div. of Human Rights, 151 AD3d 1856, 1857 [2017]), presentation of such evidence arguably could have led to a finding by SDHR that "there is some evidence of unlawful discrimination" (Matter of Smith v New York State Div. of Human Rights, 142 AD3d 1362, 1363 [2016] [internal quotation marks and citation omitted], lv denied 30 NY3d 913 [2018]; see Matter of Mambretti v New York State Div. of Human Rights, 129 AD3d 1696, 1697 [2015], lv denied 26 NY3d 909 [2015]).