Calkins v Dernlan (2025 NY Slip Op 00135)

Calkins v Dernlan

2025 NY Slip Op 00135

Decided on January 9, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 9, 2025

CV-23-2108
[*1]Connor Calkins, Respondent,
v
Matthew Dernlan, Appellant.

Calendar Date:November 12, 2024

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Smith, Sovik, Kendrick & Sugnet, PC, Syracuse (John P. Coghlan of counsel), for appellant.
Mark David Shirian PC, New York City (Mark D. Shirian of counsel), for respondent.

Powers, J.
Appeal from an order of the Supreme Court (Jeffrey A. Tait, J.), entered November 1, 2023 in Broome County, which partially denied defendant's motion for summary judgment dismissing the complaint.
Between 2014 and 2018, plaintiff was a Division 1 college wrestler coached by defendant at Binghamton University. In November 2018, plaintiff commenced this action, alleging causes of action for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, prima facie tort, assault and defamation. Plaintiff averred that defendant's actions as his coach caused him emotional and psychological harm. Following joinder of issue, defendant moved for summary judgment dismissing the complaint. Supreme Court, over plaintiff's objection, partially granted defendant's motion, dismissing the intentional infliction of emotional distress and prima facie tort causes of action.[FN1] However, as the record was devoid of evidence necessary to determine if defendant's coaching methods were acceptable under the circumstances, the court denied defendant's motion as to the negligence and negligent infliction of emotional distress causes of action. Additionally, the court denied defendant's motion as to plaintiff's assault cause of action finding that, "if taken literally," defendant's statement directing a teammate to punch plaintiff would place plaintiff in apprehension of an imminent battery. Defendant appeals.
"On a motion for summary judgment, it is the movant's initial burden to establish prima facie entitlement to judgment as a matter of law by submitting proof in admissible form demonstrating the absence of any material issues of fact. Upon such a showing, the burden shifts to the nonmovant to raise a triable issue of fact, again through the submission of competent evidence" (Halpin v Banks, 231 AD3d 1337, 1338 [3d Dept 2024] [internal quotation marks and citations omitted]). As is relevant to defendant's arguments on appeal, "[a] cause of action for negligence requires proof that defendant owed [plaintiff] a legally recognized duty, that defendant breached that duty and that such breach was a proximate cause of an injury suffered by [plaintiff]" (A.J. v State of New York, 231 AD3d 237, 239 [3d Dept 2024] [internal quotation marks and citation omitted]). Whereas "[a] cause of action for negligent infliction of emotional distress generally requires the plaintiff to show a breach of a duty owed to him or her which unreasonably endangered his or her physical safety, or caused him or her to fear for his or her own safety" (Doe v Langer, 206 AD3d 1325, 1331 [3d Dept 2022] [internal quotation marks and citations omitted]; see Dolgas v Wales, 215 AD3d 51, 56-57 [3d Dept 2023], lv denied 41 NY3d 904 [2024]). Finally, for a defendant to be liable in civil assault, the plaintiff must "prove that [the] defendant[ ] intentionally placed [him or] her in apprehension of imminent harmful or offensive contact" (A.M.P. v Benjamin, 201 AD3d 50, 56 [[*2]3d Dept 2021] [internal quotation marks and citation omitted]; see Rivera v State of New York, 34 NY3d 383, 389 [2019]; Mayr v Alvarez, 130 AD3d 1199, 1200 [3d Dept 2015]).
Plaintiff's interrogatories and deposition — which defendant provided in support of his motion — largely portray defendant as an intense and often angry coach. According to plaintiff, defendant required wrestlers to compete in what he titled "I Quit" matches. The objective of these matches was to force the opponent to tap out from pain or become otherwise physically unable to continue. Players were often bloodied and sometimes unconscious by the end of these matches, which plaintiff described as humiliating and dehumanizing. Although plaintiff described a myriad of specific occasions which he alleges demonstrate defendant's negligence, some bear specific mention. After a loss, defendant screamed at the team and threw a laundry basket across the room almost hitting plaintiff and another wrestler in the face. As a result of misconduct by another wrestler, defendant made the team endure a particularly tough practice after which a team member laid unconscious for 15 to 20 minutes with no coaching staff coming to his aid. Defendant allowed, and seemingly acquiesced to, players engaging in fistfights during practice. For example, a team member was known to be violent and often improperly punched his wrestling partner during practice, yet coaching staff did not ensure that this conduct ceased or hold him accountable. Defendant also ignored and did not speak to plaintiff for two weeks after plaintiff failed to qualify for nationals. Most notably, plaintiff described an incident in November 2017 where defendant ordered a team member to punch plaintiff in the face after he lost his match. According to plaintiff, defendant demanded multiple times that the teammate punch plaintiff in the face and, when he hesitated, defendant screamed, "Do you think I'm f*cking kidding, 'cause I'm not, go punch [plaintiff] in the face." Plaintiff asserts that this individual then advanced to be within five feet of plaintiff and, with his fist clenched, appeared as though he was going to strike plaintiff. When this teammate did not do so, defendant marched away and appeared irritated. Despite plaintiff competing in and winning a match later that day, he was distressed by this incident. Plaintiff noted that defendant had a lack of respect for the individuals he coached and employed tactics akin to "psychological warfare," as he intentionally taunted and instilled fear in members of the team. During his deposition, plaintiff additionally described the mental and emotional toll that resulted from his time on defendant's team.
During his deposition, defendant attempted to explain these incidents and maintained that wrestling is a violent sport during which emotions are escalated and physical altercations may occur. Defendant described "I Quit" matches as a typical practice method meant to address the fundamental [*3]nature of not quitting. This method was not only used by the coaching staff at Binghamton University, but also in defendant's coaching experience at other universities. As to the specific incidents outlined above, defendant acknowledged that he did flip a laundry basket but that he did so to get the team's attention, and the basket did not hit any person. Defendant explained that more physically grueling practices were utilized upon approval by administration as punishment when players breached the team's conduct policy but expressly denied that any player passed out as a result of these practices. Practice matches grew heated due to the nature of the sport but, according to defendant, staff intervened to deescalate the situation as quickly as possible when this occurred. However, a player known to be violent was removed from the team. Defendant denied having ignored any wrestlers and, as to the November 2017 incident, indicated that he directed the teammate to punch plaintiff to motivate him. Markedly, defendant claimed that he told the teammate to "knock some sense into" plaintiff. However, he was not being literal, and the teammate did not punch plaintiff. Defendant additionally provided the deposition testimony of an athletic trainer and an assistant coach who both opined that the "I Quit" matches were consistent with coaching methods in their experience. Moreover, the athletic trainer explained that it was clear to him that defendant was speaking figuratively when he instructed the teammate to strike plaintiff. This teammate was deposed and verified many of the incidents plaintiff described. Moreover, the teammate acknowledged that defendant did scream at him to punch plaintiff in the face, but he did not act on defendant's demand and did not approach plaintiff with his fist clenched.
Initially, defendant raises a litany of issues before this Court that he did not raise in his motion for summary judgment. Specifically, as to plaintiff's negligence claim, defendant maintains that the cause of action must fail because plaintiff concedes that he did not sustain any physical injury. While this argument is reviewable as it presents a question of law that appears on the face of the record (see Matter of Regina R. v Frederick S., 198 AD3d 1124, 1124 n 2 [3d Dept 2021]), it is nevertheless without merit as an emotional injury is compensable when a direct result of a breach of duty (see Ornstein v New York City Health & Hosps. Corp., 10 NY3d 1, 6 [2008]; Bonner v Lynott, 203 AD3d 1526, 1530 [3d Dept 2022]). Defendant's corresponding assertion that plaintiff's emotional injury was not a direct result of his purported breach is likewise raised for the first time on appeal. However, this issue does not raise a question of law appearing on the face of the record and is thus unpreserved and not reviewable on appeal.
While a claim of negligent infliction of emotional distress will fail where the plaintiff alleges no negligent conduct in the pleadings (see [*4]A.M.P. v Benjamin, 201 AD3d at 57; James v Flynn, 132 AD3d 1214, 1216 [3d Dept 2015]), plaintiff's cause of action in this respect was supported by allegations of negligent conduct which were elaborated upon in his deposition testimony. Thus, defendant's motion for summary judgment dismissing that cause of action based upon a failure to allege negligent conduct was properly denied (compare Aklipi v American Med. Alert Corp., 216 AD3d 712, 713 [2d Dept 2023]; Daluise v Sottile, 40 AD3d 801, 803-804 [2d Dept 2007]). Altogether, viewing the evidence in the light most favorable to plaintiff, as we must, defendant failed to eliminate all material questions of fact as to the negligence claims. Specifically, defendant's proof failed to establish that his actions did not breach his duty to keep plaintiff safe from physical or emotional harm. Additionally, the proof failed to establish that any breach on defendant's part did not result in unreasonably endangering plaintiff's physical safety or cause him to fear for his physical safety (see Lea v McNulty, 227 AD3d 971, 973 [2d Dept 2024]; compare Dolgas v Wales, 213 AD3d at 57; Sacino v Warwick Val. Cent. Sch. Dist., 138 AD3d 717, 719 [2d Dept 2016]). As such, Supreme Court properly denied defendant's motion for summary judgment dismissing plaintiff's claims based in negligence.
Finally, as to plaintiff's assault cause of action, defendant submitted contradicting deposition testimony describing the November 2017 incident. Therefore, by his own submissions, defendant failed to satisfy his burden of proof by eliminating all material questions of fact and establishing that he did not intentionally place plaintiff in fear of an imminent battery as a matter of law (see Butler v Magnet Sports & Entertainment Lounge, Inc., 135 AD3d 680, 681 [2d Dept 2016], lv dismissed 27 NY3d 1032 [2016]; Guntlow v Barbera, 76 AD3d 760, 766 [3d Dept 2010], appeal dismissed 15 NY3d 906 [2010]; compare Barnett v Fusco, 206 AD3d 962, 963 [2d Dept 2022]). As such, Supreme Court properly denied defendant's motion for summary judgment dismissing plaintiff's assault cause of action. Defendant's remaining arguments, to the extent not specifically addressed herein, have been found to be either unpreserved or without merit.
Garry, P.J., Lynch, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: At that time, plaintiff had already withdrawn his defamation cause of action.