46

[49 NE3d 1171, 29 NYS3d 879]

ANITA CHANKO, Individually and as Executor of MARK S. CHANKO, Deceased, et al., Appellants, v AMERICAN BROADCASTING COMPANIES, INC., et al., Respondents, et al., Defendants.

Argued February 18, 2016; decided March 31, 2016

*Norman A. Olch*, New York City, and *Law Offices of Mark J. Fox*, New York City, for appellants.

48

*Nixon Peabody LLP*, Jericho (*Michael S. Cohen, Christopher J. Porzio* and *Michelle Yuen* of counsel), for New York and Presbyterian Hospital and another, respondents.

*Levine Sullivan Koch & Schulz, LLP*, New York City (*Nathan Siegel* of counsel), for American Broadcasting Companies, Inc., respondent.

**OPINION OF THE COURT**

STEIN, J.

Defendants' actions in filming a patient's medical treatment and death in a hospital emergency room without consent, and then broadcasting a portion of the footage as part of a documentary series about medical trauma, were not so extreme and outrageous as to support a cause of action by the patient's family members for intentional infliction of emotional distress. However, the complaint sufficiently states a cause of action against the hospital and treating physician for breach of physician-patient confidentiality. Therefore, the Appellate Division order should be modified to reinstate that cause of action against those two defendants.

## I.

Mark Chanko (decedent) was brought into the emergency room of defendant The New York and Presbyterian Hospital (the Hospital). He had been hit by a vehicle, but was alert and responding to questions. Defendant Sebastian Schubl was the Hospital's chief surgical resident and was responsible for decedent's treatment. While decedent was being treated, employees of ABC News, a division of defendant American Broadcasting Companies, Inc. (ABC), were in the Hospital—with the Hospital's knowledge and permission—filming a documentary series (NY Med) about medical trauma and the professionals who attend to the patients suffering from such trauma. No one informed decedent or any of the individual

plaintiffs[1]—most of whom were at the Hospital—that a camera crew was present and filming, nor was their consent obtained for filming or for the crew's presence.

Less than an hour after decedent arrived at the Hospital, Schubl declared him dead. That declaration was filmed by ABC, and decedent's prior treatment was apparently filmed as well. Schubl then informed the family of decedent's death, with that moment also being recorded without their knowledge.

Sixteen months later, decedent's widow, plaintiff Anita Chanko, watched an episode of NY Med on her television at home. She recognized the scene, heard decedent's voice asking about her, saw him on a stretcher, heard him moaning, and watched him die. In addition, she saw, and relived, Schubl telling the family of his death. She then told the other plaintiffs, who also watched the episode. This was the first time plaintiffs became aware of the recording of decedent's medical treatment and death.

Plaintiffs commenced this action against, among others, ABC, the Hospital and Schubl. Defendants separately moved to dismiss the complaint. Supreme Court partially granted the motions, dismissing all causes of action except breach of physician-patient confidentiality against the Hospital and Schubl (the fourth cause of action), and intentional infliction of emotional distress against ABC, the Hospital and Schubl (the fifth cause of action) (2014 NY Slip Op 30116[U] [2014]). Defendants separately appealed the order insofar as the motions to dismiss were denied. Plaintiffs did not cross-appeal.

The Appellate Division modified Supreme Court's order by reversing the portions of the order that were appealed, granted the motions in their entirety and dismissed the entire complaint (122 AD3d 487 [1st Dept 2014]). That Court granted plaintiffs leave to appeal.

## II.

### A. Breach of Physician-Patient Privilege

Initially, we note that plaintiffs did not cross-appeal to the Appellate Division from Supreme Court's dismissal of the cause of action for breach of physician-patient confidentiality as asserted against ABC. Thus, we may consider only whether that cause of action was adequately alleged against the Hospital

---

[1]. The plaintiffs consist of decedent's widow, individually and as executor of decedent's estate, as well as other family members.

and Schubl (*see* CPLR 5515; *Hecht v City of New York*, 60 NY2d 57, 60-61 [1983]; *Matter of Harmon*, 73 AD3d 1059, 1062 [2d Dept 2010]). To the extent plaintiffs belatedly attempt to argue that ABC aided and abetted those defendants in breaching confidentiality, that argument is not properly before us.

When considering these pre-answer motions to dismiss the complaint for failure to state a cause of action, we must give the pleadings a liberal construction, accept the allegations as true and accord the plaintiffs every possible favorable inference (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]). We may also consider affidavits submitted by plaintiffs to remedy any defects in the complaint, because the question is whether plaintiffs have a cause of action, not whether they have properly labeled or artfully stated one (*see Leon v Martinez*, 84 NY2d 83, 88 [1994]).

With that standard in mind, we begin by observing that the physician-patient privilege did not exist at common law; it was created by statute, with New York having the first such statute in the nation, now codified at CPLR 4504 (*see Matter of Grand Jury Investigation in N.Y. County*, 98 NY2d 525, 529 [2002]; *Dillenbeck v Hess*, 73 NY2d 278, 283 [1989]). That statute provides that, "[u]nless the patient waives the privilege, a person authorized to practice medicine . . . shall not be allowed to disclose any information which he [or she] acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity" (CPLR 4504 [a]).

The policy objectives of the statute are to: (1) maximize unfettered communication between patients and medical professionals, so that people will not be deterred by possible public disclosure "from seeking medical help and securing adequate diagnosis and treatment"; (2) encourage physicians to candidly record confidential information in medical records, so they are not torn between the legal duty to testify and the professional obligation to honor patient confidences; and (3) protect the reasonable privacy expectations of patients that their sensitive personal information will not be disclosed (*Dillenbeck*, 73 NY2d at 285 [internal quotation marks and citation omitted]; *see Matter of Grand Jury Investigation in N.Y. County*, 98 NY2d at 529). The privilege should "be given a broad and liberal construction to carry out its policy" (*Matter of Grand Jury Investigation in N.Y. County*, 98 NY2d at 530 [internal quotation marks and citations omitted]).

The privilege applies not only to information orally communicated by the patient, but also to information ascertained by observing the patient's appearance and symptoms, unless those factual observations would be obvious to lay observers (*see Dillenbeck*, 73 NY2d at 284). Generally, the privilege covers all " 'information relating to the nature of the treatment rendered and the diagnosis made' " (*Laura Inger M. v Hillside Children's Ctr.*, 17 AD3d 293, 295 [1st Dept 2005], quoting *Hughson v St. Francis Hosp. of Port Jervis*, 93 AD2d 491, 499 [2d Dept 1983]). Although not covered by the statute, "information obtained in a professional capacity but not necessary to enable the physician to fulfill his or her medical role is a protected confidence, the disclosure of which constitutes professional misconduct in the absence of patient consent or legal authorization" (*Lightman v Flaum*, 97 NY2d 128, 136 [2001], *cert denied* 535 US 1096 [2002]; *see* Education Law § 6530 [23]).

A physician's disclosure of secrets acquired when treating a patient "naturally shocks our sense of decency and propriety," which is one reason it is forbidden (*Dillenbeck*, 73 NY2d at 285 [internal quotation marks omitted]). Even apart from CPLR 4504, the legislature has declared that it is the public policy of this State to protect the "privacy and confidentiality of sensitive medical information" (*Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 82 [2d Dept 2007]; *see* Public Health Law §§ 2803-c [1], [3] [f]; 4410 [2]). As relates to emergency rooms, specifically, this Court has stated that "[p]atients should not fear that merely by obtaining emergency medical care they may lose the confidentiality of their medical records and their physicians' medical determinations. A contrary result would discourage critical emergency care, intrude on patients' confidential medical relationships and undermine patients' reasonable expectations of privacy" (*Matter of Grand Jury Investigation in N.Y. County*, 98 NY2d at 532). The physician-patient privilege, together with its concomitant duty of confidentiality, belongs to the patient and is not terminated by death alone (*see Prink v Rockefeller Ctr.*, 48 NY2d 309, 314 [1979]).

The elements of a cause of action for breach of physician-patient confidentiality are: (1) the existence of a physician-patient relationship; (2) the physician's acquisition of information relating to the patient's treatment or diagnosis; (3) the disclosure of such confidential information to a person not connected with the patient's medical treatment, in a manner that allows the patient to be identified; (4) lack of consent for that

disclosure; and (5) damages (*see Burton v Matteliano*, 81 AD3d 1272, 1274 [4th Dept 2011], *lv denied* 17 NY3d 703 [2011]; *MacDonald v Clinger*, 84 AD2d 482, 485-486 [4th Dept 1982]; *Doe v Roe*, 93 Misc 2d 201, 210-213, 217-218 [Sup Ct, NY County 1977]; *see also Rut v Young Adult Inst., Inc.*, 74 AD3d 776, 777 [2d Dept 2010]). Here, the complaint alleges that decedent was a patient at the Hospital and that Schubl was his treating physician. In the complaint's fourth cause of action, decedent's estate alleges "[t]hat defendants[ ] unnecessarily, recklessly, willfully, maliciously and in conscious disregard of [decedent's] rights disclosed and discussed his medical condition with cast members of NY MED and allowed them to videotape said conversations and videotape his medical treatment for broadcast and dissemination to the public in an episode of that television show." Asserting that the public does not have any legitimate interest in this information, the complaint states that "[d]efendants' disclosure of [decedent's] medical information constitutes a violation of physician [-]patient confidentiality and an invasion of his privacy and is a violation of State and Federal statutes protecting the privacy of medical records and information." The complaint seeks damages for injuries and loss as determined at trial.

The fourth cause of action, when liberally construed, can be read to state a claim sounding in breach of physician-patient confidentiality. Initially, we reject the assertion of the Hospital and Schubl that, in order to support such a cause of action, the disclosed medical information must be embarrassing or something that patients would naturally wish to keep secret. While the disclosures of medical information considered in various prior court decisions may have fit within those categories (*see e.g. Doe v Guthrie Clinic, Ltd.*, 22 NY3d 480, 482-483 [2014] [nurse revealed to patient's girlfriend that patient had sexually transmitted disease]; *Randi A. J.*, 46 AD3d at 75-76 [clinic revealed to patient's mother that patient had an abortion]), that is not an element of the cause of action. Stated otherwise, whether the confidentiality inherent in the fiduciary physician-patient relationship is breached does not depend on the nature of the medical treatment or diagnosis about which information is revealed. Our broad rule protects all types of medical information and provides consistency, avoiding case-by-case determinations of what is considered embarrassing to any particular patient.

Here, defendants do not contest the existence of a physician-patient relationship or that the Hospital and Schubl

obtained confidential medical information regarding decedent. Rather, defendants assert that, inasmuch as decedent was not identifiable on the aired episode of the television program, his confidential information was not disclosed. Indeed, in concluding that the complaint did not sufficiently state a cause of action for breach of physician-patient confidentiality, the Appellate Division appears to have focused only on the aired television episode and the fact that decedent's image was blurred and his name was not used in the episode (122 AD3d at 488). However, affidavits submitted in opposition to defendants' motions allege that at least one other person who watched the broadcast recognized decedent.

Moreover, even if no one who actually viewed the televised program recognized decedent, thereby rendering plaintiffs unable to state a cause of action based solely on the broadcast of the program, the complaint expressly alleges an improper disclosure of medical information to the ABC employees who filmed and edited the recording, in addition to the broadcast itself. Thus, the Appellate Division viewed the allegations too narrowly, in contravention of the liberal standard for reviewing pleadings at this stage of the litigation. Specifically, the complaint clearly alleges that the Hospital and Schubl revealed confidential medical information concerning decedent's treatment and diagnosis to the ABC film crew that was present in the Hospital while the treatment was occurring. As expanded by the motion papers, plaintiffs also allege that decedent's medical information was depicted in the raw footage of the recordings, and 13 people are listed on the DVD as being involved in the editing process, any of whom may have seen such information. At this pre-discovery stage of the litigation, it is unclear exactly what information was contained in that raw footage, who saw it, and to what degree decedent could be identified by anyone who viewed it.

In sum, the pleadings, together with the submitted affidavits, allege that a fiduciary physician-patient relationship existed, and that the duty of confidentiality springing from that relationship was breached when the Hospital and Schubl allowed the ABC crew to be present during the filming of decedent's medical treatment and/or to view such film at a later time. Although the complaint does not explicitly state that decedent's consent was not obtained for that disclosure, a lack of consent can be inferred from the allegation that the disclosure violated privacy statutes and patient confidentiality.

Hence, at this point, the only element for which the sufficiency of the allegations is truly at issue is damages.

In that regard, defendants argue that plaintiffs have not alleged any specific damages. However, as noted, discovery has not yet taken place, and plaintiffs have viewed only a few minutes of aired video footage from which to craft their allegations. In discovery, they will presumably have access to the raw footage of film covering the nearly 50 minutes that decedent was in the Hospital before he died, as well as deposition testimony of witnesses who were in decedent's presence there. That evidence could very well reveal the level of decedent's awareness that others were present while he was being treated, and any reaction he may have had to their presence. Defendants can then demand that plaintiffs clarify the alleged damages in a bill of particulars. Notably, damages may be awarded for injury even if it only lasted for a short period of time before death (*see generally Cummins v County of Onondaga*, 84 NY2d 322, 324-326 [1994]).

Thus, although the allegations of damages here lacked detail, they were sufficient in view of the pre-answer, pre-discovery posture of defendants' motions, particularly given that defendants hold the evidence that plaintiffs need to formulate their allegations. Viewing the complaint liberally, and granting plaintiffs every favorable inference, we conclude that the estate has stated a cause of action against the Hospital and Schubl for breach of physician-patient confidentiality.

## B. Intentional Infliction of Emotional Distress

This Court has enumerated four elements of a cause of action for intentional infliction of emotional distress: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (*Howell v New York Post Co.*, 81 NY2d 115, 121 [1993]). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*Howell*, 81 NY2d at 122 [internal quotation marks and citation omitted], quoting *Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983]). Here, the complaint's fifth cause of action addresses each element above and alleges that the Hospital and Schubl allowed

ABC to broadcast and disseminate the footage of the final moments of decedent's life, without the knowledge or consent of decedent or plaintiffs. The complaint alleges that plaintiffs watched the episode and were shocked and upset, that "[d]efendants acted intentionally, recklessly, willfully, maliciously and deliberately," and that it was foreseeable that plaintiffs would be caused to suffer emotional distress. Alternatively, the complaint alleges that "defendants acted with reckless disregard for the probability that they would cause plaintiffs to suffer emotional distress," and that defendants knew or should have known that emotional distress was a likely result of their actions. The complaint further alleges that plaintiffs experienced emotional distress due to defendants' conduct, and that "[d]efendants' conduct was extreme and outrageous, beyond all possible bounds of decency, utterly intolerable in a civilized community, and without privilege."

Although these allegations facially address all of the required elements, they are not sufficient to support this cause of action because they do not rise to the level necessary to satisfy the outrageousness element—the element most susceptible to a determination as a matter of law—which is designed to filter out petty complaints and assure that the emotional distress is genuine (*see Howell*, 81 NY2d at 121). Noting that "the requirements . . . are rigorous, and difficult to satisfy," we have commented that, "of the intentional infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous" (*Howell*, 81 NY2d at 122 [internal quotation marks and citations omitted and emphasis added]).

The conduct at issue here for purposes of the fifth cause of action—the broadcasting of a recording of a patient's last moments of life without consent—would likely be considered reprehensible by most people, and we do not condone it. Nevertheless, it was not so extreme and outrageous as to satisfy our exceedingly high legal standard.[2] The footage aired by ABC was edited so that it did not include decedent's name,

---

**2.** We note that, after viewing the broadcast, one of decedent's sons (who is a physician) submitted an affidavit commenting on, among other things, what he perceived as highly inappropriate conduct on Schubl's part, namely, focusing on the camera and giving an interview in the emergency room, instead of concentrating on providing lifesaving medical services to decedent. However, plaintiffs have never relied—and do not now rely—on such conduct to supply a basis for their claim for intentional infliction of emotional distress. We, therefore, have no occasion at this time to express an opinion as to

his image was blurred, and the episode included less than three minutes devoted to decedent and his circumstances. We cannot conclude that defendants' conduct in allowing the broadcasting of that brief, edited segment is more outrageous than other conduct that this Court and the Appellate Division Departments have determined did not rise to the level required to establish "extreme and outrageous conduct" sufficient to state a cause of action for intentional infliction of emotional distress. For example, we did not deem a newspaper's conduct sufficiently outrageous when it published a picture of a person in a psychiatric facility—thereby informing the world that the photographed person was a patient at such a facility—even though the residents were photographed by someone trespassing on facility grounds and the facility had expressly requested that the newspaper not publish pictures of residents (*see Howell*, 81 NY2d at 118). Similarly, the conduct of a television station has been deemed insufficiently outrageous when the station displayed recognizable images of rape victims after repeatedly assuring them that they would not be identifiable (*see Doe v American Broadcasting Cos.*, 152 AD2d 482, 483 [1st Dept 1989], *appeal dismissed* 74 NY2d 945 [1989]).

We conclude that defendants' conduct here, while offensive, was not so atrocious and utterly intolerable as to support a cause of action in the context of this tort (*see Marmelstein v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue*, 11 NY3d 15, 22-23 [2008]; *Freihofer v Hearst Corp.*, 65 NY2d 135, 143-144 [1985]).[3] Hence, there is no need to address whether the newsworthiness privilege is applicable.

Accordingly, the Appellate Division order should be modified, without costs, by denying the motion of defendants New York and Presbyterian Hospital and Sebastian Schubl to dismiss the fourth cause of action for breach of physician-patient confidentiality and, as so modified, affirmed.

Judges PIGOTT, RIVERA, ABDUS-SALAAM, FAHEY and GARCIA concur; Chief Judge DIFIORE taking no part.

---

whether allegations of that nature would be sufficient to state a cause of action.

3. Unlike plaintiffs' fourth cause of action, the fifth cause of action cannot rely on additional evidence that might be revealed in discovery. To state a cause of action for intentional infliction of emotional distress, plaintiffs must already be aware of the offending conduct and have suffered emotional distress *as a result thereof*. Thus, dismissal of this claim is appropriate at this stage of the litigation.

Order modified, without costs, by denying the motion of defendants New York and Presbyterian Hospital and Sebastian Schubl, M.D. to dismiss the fourth cause of action and, as so modified, affirmed.