Kolomenskava v Meta Platforms, Inc. (2025 NY Slip Op 50972(U))

[*1]

Kolomenskava v Meta Platforms, Inc.

2025 NY Slip Op 50972(U)

Decided on June 15, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 15, 2025
Supreme Court, Kings County

Yana Kolomenskava, Petitioner,

against
Meta Platforms, Inc., Respondent.

Index No. 430/2025

Yana Kolomenskaya, Petitioner pro se.

Aaron D. Maslow, J.

The following papers were used in this proceeding: notice of petition, verified petition, verification, Exhibits A through E, RJI.
Upon the foregoing papers and having heard oral argument on the record, the within special proceeding is determined as follows.
Background
Petitioner, representing herself, is seeking the immediate reinstatement of her Instagram account, as well as damages in the amount of $2,500 to cover legal expenses and as compensation for emotional distress. Petitioner's account was flagged as fake [FN1]
and disabled on or around March 18, 2025, resulting in the first step she took: attempting to resolve this issue through Meta's internal channels.[FN2]
These attempts (submitting identity verification and emailing [*2]Meta) weren't successful, with Petitioner initially receiving automated messages [FN3]
and then, when forwarded to an actual person, receiving no perceived meaningful help. On April 7, 2025, Petitioner then mailed a formal demand letter to Meta's California and New York legal service addresses threatening legal action if ignored. No response was received. Therefore, Petitioner requests that the court compel Meta Platforms, Inc. to reinstate her Instagram account and pay $2,500 in reparations for legal expenses and emotional harm.
Petitioner filed this proceeding on May 5, 2025, and made service upon Respondent Meta Platforms, Inc. by serving a registered agent, Corporation Service Company, at 80 State St, Albany, NY 12207. Petitioner's main contention is that the disabling of her Instagram account was wrongful and arbitrary. Due to the algorithm-heavy process of the account screening process and the incorrect classification of her account as fake, Petitioner argues that this termination of the Instagram account not only was unsupported by evidence, but has caused substantial personal and emotional harm.
Petitioner states that her Instagram account was used as a personal and creative platform to share original content, engage with global creative communities, and maintain visibility, authenticity, and credibility. With that, Petitioner believes that the disabling of her account has caused significant reputational damage and disrupted ongoing creative work and public engagement, resulting in emotional distress. With this deactivation, Petitioner claims to have lost access to meaningful contacts, including distant family members, longtime friends, and professional collaborators across multiple countries — over a decade's worth of personal conversations, and memories, all of which were created and preserved on the account. Petitioner attaches Exhibit D and provides reposts and mentions from friends from all over the world requesting that Meta unblock her, which she claims is proof of how the deactivation of the account has affected not only Petitioner.

Discussion
Initially, the Court notes that this matter was commenced with a notice of petition and verified petition, indicative of a special proceeding (see CPLR 401). However, "All civil judicial proceedings shall be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized" (id. 103 [b]). No special proceeding in New York law provides the availablility of relief in the form of restoring one's social media account.
In any event, the Court recognizes that pro se litigants might not be familiar with legal procedures (e.g. Brown v Lavine, 45 AD2d 753 [2d Dept 1974] [new administrative hearing afforded pro se individual who erroneously thought pre-hearing off-the-record defense presented to hearing officer was on the record]), and that certain latitude may be afforded (e.g. Haverlin v Gottlieb, 49 Misc 3d 131[A], 2015 NY Slip Op 51750[U] [App Term, 9th & 10th Dists. 2015] [motion providently construed as one to renew]; Bank Trust Natl. Assn. v Dubrowski, 2024 WL 3312482 [Sup Ct, NY County 2024] [court will examine claim under uncited provision as well as cited one]; Matter of J.E.P. v People, 9 Misc 3d 1104[A], 2005 NY Slip Op 51397[U] [Fam Ct, Nassau County 2005] [incorrect caption and minor technical deficiencies in papers excused]).
Even so, "A self-represented litigant acquires no greater rights than any other litigant (see Duffen v. State, 245 AD2d 653, 665 N.Y.S.2d 978; Brooks v. Inn at Saratoga Assn., 188 AD2d 921, 591 N.Y.S.2d 625)" (Greenfield v Gluck, 2003 WL 1961333 [App Term 2d & 11th Dists 2003] [untimely summary judgment motion]). Petitioner is still required to articulate a basis in law for granting her the relief she seeks. The Court will address the matter raised by Petitioner.
Since the exact screening process and specific suspicious activity flagged on Petitioner's account isn't able to be accessed without subpoenaing Meta, unless that action is taken it would not be possible to rule on the aspect of the incorrect classification of Petitioner's account as fake. However, even though the deactivation of Petitioner's account was classified as "fake," that doesn't necessarily mean that the reason Meta disabled her account was that they thought her account was not real. When accounts are disabled, they are sorted into general categories per each violation. This means that although Petitioner's account was real, the activity of the account may have mirrored those of fake accounts.
With the creation of an Instagram account, Petitioner would have needed to agree to Meta's terms and conditions, meaning that she would have agreed to the fact that Instagram has the right to remove any content or information shared on their service if they believe that it violated their Terms of Use. Because of this, even if the termination of the account is believed to be wrongful, Petitioner has already agreed to and signed this contract. All Internet accounts have Terms of Use and Petitioner did not allege that Meta lacks them.
In any event, Petitioner has failed to demonstrate a breach of contract by Meta; no reference is made to the contract. As was stated in another case involving an alleged termination of an Internet account:
In order to prevail on a claim for breach of contract, a claimant must demonstrate: (1) an agreement between the parties; (2) performance by the claimant; (3) failure to perform by the breaching party; and (4) resultant damages. Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin Corp., 567 F. Supp. 2d 579, 592 (SDNY 2008), affd sub nom. Austrian Airlines Oesterreichishe Luftverkehrs AG v UT Fin. Corp., 336 Fed Appx 39 (2d Cir 2009).
At trial, claimant was unable to identify what contract was breached by Hinge terminating his account. Moreover, to the extent that claimant alleges Hinge breached the Terms of Use, such argument is unavailing, as the Terms of Use unambiguously permit Hinge to terminate a user's account if Hinge believes their Terms of Use have been violated. (Bangalore v Match Group, LLC, 85 Misc 3d 1263[A], 2025 NY Slip Op 50608[U], *2-3 [Civ Ct, NY County 2025].)
Petitioner alleges emotional distress as a result of the loss of her account, but fails to provide any sort of evidence or documentation of said distress. The only somewhat relevant proof provided would be Exhibit D, the reposts and mentions from friends from all over the world requesting that Meta unblock her account, which would only be proof of how the deactivation of the account has affected others, and not Petitioner. With that, neither bar for a valid cause of action of negligent infliction of emotional distress or intentional infliction of emotional distress has been met, and Petitioner cannot be compensated for such (see Aklipi v American Med. Alert Corp., 216 AD3d 712, 713 [2d Dept 2023] [cause of action to recover damages for negligent infliction of emotional distress generally must be premised upon breach of a duty owed to plaintiff which either unreasonably endangers plaintiff's physical safety or causes [*3]plaintiff to fear for his or her own safety]; King v Facebook, Inc., 572 F Supp 3d 776 [ND Cal 2021] [disabling of user's account fails to state claim for either intentional infliction of emotional distress or negligent infliction of emotional distress]).
"This Court has enumerated four elements of a cause of action for intentional infliction of emotional distress: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (Chanko v American Broadcasting Companies Inc., 27 NY3d 46, 56 [2016]). Respondent Meta's conduct here does not rise to such level.
"While the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred" (Albala v City of New York, 54 NY2d 269, 274 [1981]; see Howard v Lecher, 42 NY2d 109, 111 [1977]).

Conclusion
Petitioner agreed with Meta's terms and conditions upon creation of her account in addition to there being a lack of evidence and documentation of alleged emotional distress and, with that, Petitioner's petition cannot be granted. Accordingly, it is hereby ORDERED as follows: Petitioner's petition is DENIED. The within special proceeding is dismissed.

Footnotes

Footnote 1:With the increase of fake and bot accounts across social media, most social media companies now employ tools such as AI and machine learning algorithms to filter content across accounts and flag accounts with suspicious activity. Meta specifically uses a hybrid model, with machine learning algorithms performing a majority of the screening, flagging, and disabling, with the occasional account forwarded to human reviewers in complex cases or if appealed.

Footnote 2:Meta Platforms, Inc. is the parent company of Instagram.

Footnote 3:Because Meta receives countless messages, requests, and such appeals daily, initial messages will be received and answered by AI, and then only forwarded to a real human if requested or if the request is beyond AI's purview.