Todd R. v Rensselaer City Sch. Dist. (2025 NY Slip Op 25268)

[*1]

Todd R. v Rensselaer City Sch. Dist.

2025 NY Slip Op 25268

Decided on December 17, 2025

Supreme Court, Rensselaer County

Mendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 17, 2025
Supreme Court, Rensselaer County

Todd R. and LARK R., individually and as 
 Guardians ad Litem to infant B.R., Plaintiffs,

against
Rensselaer City School District, JOSEPH KARDASH, in his official capacity as Superintendent of Schools, JEFFREY PALMER, in his official capacity as Principal, 
 AMY PRABHAKARAN, CATHERINE BARBER, and CHRIS JOHNSON, Defendants.

Index No. EF2025-279666

Law Office of Ian H. Silverman, Esq.
Ian H. Silverman, Esq., of counsel
For Plaintiffs
Maynard, O'Connor, Smith & Catalinotto, LLP
Robert A. Rausch, Esq., of counsel
For Defendants

Noel Mendez, J.

In this civil action alleging various forms of tortious conduct, Defendants Rensselaer City School District ("School District"), Joseph Kardash, in his official capacity as Superintendent of Schools ("Superintendent"), Jeffery Palmer, in his official capacity as Principal ("Principal"), Amy Prabhakaran ("Prabhakaran"), Catherine Barber ("Barber"), and Chris Johnson ("Johnson") (collectively, "Defendants") move this Court for an order partially dismissing the Verified Complaint for failure to state a cause of action, insofar as dismissing the causes of action for assault, battery, and intentional infliction of emotional distress in their entirety; dismissing all causes of action as alleged against the Superintendent, the Principal, and Prabhakaran; and dismissing the claims for punitive damages and attorneys' fees.
Defendants also move for a protective order either striking a demand for the disclosure of [*2]certain videos relating to the action, or, alternatively, limiting the disclosure of said videos and shielding them from re-disclosure; and for an order placing limited restrictions on public statements concerning the alleged incident giving rise to the lawsuit and the lawsuit itself.
Plaintiffs Todd R. ("Todd R.") and Lark R. ("Lark R.") (together, "Parents"), individually and as Guardians ad Litem to minor B.R. ("B.R.") (collectively, "Plaintiffs"), oppose both motions.
Based on the parties' submissions for an order partially dismissing the Verified Complaint, the Court denies the branch of Defendants' motion seeking dismissal of the causes of action for assault, battery, and intentional infliction of emotional distress; grants in part the branch of Defendants' motion seeking dismissal of the causes of action for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment as asserted against the Superintendent, the Principal, and Prabhakaran, but denies in part this branch of Defendants' motion due to a remaining claim of negligence as asserted against them; grants the branch of Defendants' motion seeking dismissal of the claim for intentional infliction of emotional distress as asserted against the School District; and grants the branch of Defendants' motion seeking dismissal of Plaintiffs' claims for punitive damages and attorneys' fees.
Based on the parties' submissions with respect to the motion seeking, inter alia, a protective order, the Court denies in part the branch of Defendants' motion seeking a protective order striking Plaintiffs' request for the disclosure of the videos, but grants in part this branch of Defendants' motion to the extent of granting disclosure with certain conditions; and denies the branch of Defendants' motion seeking an order limiting Plaintiffs' speech concerning the lawsuit, without prejudice.
FACTS AND PROCEDURAL HISTORY
As alleged by Plaintiffs in their Verified Complaint, the Parents reside in the City of Rensselaer with their minor child, B.R., who was born in 2014. The Parents discovered when B.R. was approximately two and a half years old that B.R. suffered from a delay in speech. B.R. received some form of early intervention services from the Rensselaer County Department of Health. In 2019, B.R. was diagnosed with both Level One Autism Spectrum Disorder and Sensory Processing Disorder. B.R. struggles with communication insofar as they are sometimes unable to generate speech and describe what transpires throughout the school day. B.R. also struggles with physical contact insofar as contact for B.R. can be overwhelming and painful. Given these difficulties, B.R. sometimes becomes physically defensive. This occurs when B.R. is unable to communicate at any given moment or when subjected to "unwelcome touching."
The Parents enrolled B.R. for school within the School District when B.R. became eligible for the pre-Kindergarten program in September of 2018 — some time before B.R. was diagnosed with Level One Autism Spectrum Disorder and Sensory Processing Disorder. Upon enrollment, the School District tracked B.R.'s progress and developed an Individualized Education Program for B.R.'s benefit. B.R. would go on to attend Van Rensselaer Elementary School. During the 2023-2024 academic year, B.R. was in fourth grade. He was placed in a class having both a general education teacher and a special education teacher. At the time, B.R. was receiving speech therapy and counseling through the School District. According to the Parents, the School District knew about B.R.'s diagnoses.
On Friday, February 9, 2024, at approximately 3:00 pm, as students were being [*3]dismissed from school, Barber, the school psychologist and Chairperson of the Committee on Special Education, and Johnson, the school Social Media Counselor, allegedly forced B.R. to the ground repeatedly and restrained B.R. against their will. Given their speech limitations, B.R. was unable to communicate what happened to their Parents. The Principal called the Parents shortly after the incident to inform them that B.R. would be suspended the following Monday for one day. Lark R. asked for an explanation, but the Principal told Lark R. to speak to their child. Approximately two days later, the Parents spoke over the phone with the Superintendent, who indicated that it was unusual for the School District to suspend an elementary school student, but that he did not have any additional information regarding the incident. Todd R. and Lark R. spoke to multiple school officials, including Prabhakaran, to no avail. The Parents were finally able to view videos of the incident approximately twenty-five days after it had occurred.
According to the Parents' description, the videos — of which there are fourteen — revealed that on the afternoon of the alleged incident, B.R. was being escorted off the premises for dismissal by Barber, Johnson, and one other school employee, Chelsea Carbone ("Carbone"). The three adults walked next to, in front of, and behind of, B.R., respectively. B.R. attempted to join another group of students. Barber grabbed B.R. across the latter's body and around the neck, dragging B.R. to the ground. Barber and Johnson then seemingly squatted next to B.R. as B.R. laid there. B.R. got up on his hands and knees, started crawling across the school hallway, and stood up, only to fall to his knees. B.R. then crawled to a wall for support, got up a second time, and began walking down the hallway. It was at this moment that another, unnamed adult got in front of B.R. to impede B.R.'s progress. B.R. attempted to move around that person, but Johnson grabbed B.R. by the backpack, pulling B.R. backwards and onto the ground. Plaintiffs claim that Johnson pulled B.R. one more time to the ground as B.R. neared the school exit. B.R. found himself surrounded by three other adults before being allowed to exit the school alone, without supervision, and into an area outside the school where school buses and other vehicles congregate.
Plaintiffs claim B.R.'s physical and emotional health began to deteriorate. B.R. was unable to attend school on a full time basis because of debilitating headaches and certain physical illnesses resulting from the alleged incident. B.R. stopped attending school regularly after Memorial Day of 2024. Plaintiffs allege that B.R. suffered a brain injury due to Defendants' conduct and now has Post-Concussion Syndrome.
Plaintiffs filed a Notice of Claim pursuant to General Municipal Law § 50-e, dated May 1, 2024, and the Parents were subsequently examined pursuant to General Municipal Law § 50-h in July of that year. Plaintiffs have now commenced this lawsuit, alleging causes of action for assault, battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and false imprisonment, suing the participants of the alleged incident, as well as others in their official capacities, and arguing liability under a theory of respondeat superior as against the School District. Defendants interposed a general denial with numerous affirmative defenses. Defendants now move for partial dismissal of the Verified Complaint, as well as for an order striking Plaintiffs' demand for disclosure of the videos or otherwise limiting the disclosure of the videos, and an order limiting Plaintiffs from making public statements about the case.

ANALYSIS
I.
First, Defendants move for an order partially dismissing the Verified Complaint. Specifically, they seek to dismiss, for failure to state a cause of action, the causes of action for assault, battery, and intentional infliction of emotional distress, all in their entirety; all causes of action as asserted against the Superintendent, the Principal, and Prabhakaran; and the claims for punitive damages and attorneys' fees. In their motion papers, Defendants do not dispute that Barber and Johnson, who at the time was a mental health specialist and not a Social Media Counselor, were escorting B.R. on the date and time in question. Indeed, Defendants claim that Barber and Johnson were escorting B.R. throughout the building during dismissal, and that there were several incidents where B.R. began to move and run away from them. Defendants maintain that contact with B.R. was minimal yet necessary to prevent the child from fleeing their supervision and possibly hurt themselves. The Parents were allowed to view the videos and testified as to what they saw during Defendants' examination of them, which was undertaken pursuant to section 50-h of the General Municipal Law. Defendants cite to the transcripts of these examinations in support of their motion to dismiss the Verified Complaint under CPLR 3211 (a) (7), claiming, inter alia, that Todd R.'s statement, made during the examination, concerning lack of knowledge as to Barber and Johnson's intent support the dismissal of all the causes of action where intent is an element. Defendants essentially assert that the causes of action requiring proof of intent — specifically, assault, battery, and intentional infliction of emotional distress — should be dismissed because Todd R. testified during the 50-h examination that they did not know what Barber and Johnson had intended when restraining B.R. Defendants further argue that Plaintiffs failed to state causes of action as against the Superintendent, the Principal, and Prabhakaran, and that Plaintiffs' claims for punitive damages and attorneys' fees must be dismissed due to existing case law.
In opposition, Plaintiffs claim that intent for all the claims requiring proof thereof can be inferred from Barber and Johnson's conduct, and that the claim for intentional infliction of emotional distress should not be dismissed prematurely, even as the claim pertains to the School District. In that regard, Plaintiffs claim that the School District should be held liable under the theory of respondeat superior. Insofar as the Superintendent, the Principal, and Prabhakaran are concerned, Plaintiffs maintain that their refusal to tell the Parents what happened resulted in a delay in B.R. receiving immediate medical attention. Plaintiffs concede they are unable to recover punitive damages against governmental entities but nevertheless seek punitive damages as against the individual Defendants.
The Court notes at the outset that the Notice of Claim served upon Defendants conforms to the requirements of the General Municipal Law, to the extent that the notice provides the School District and Defendants with information sufficient to enable them to investigate the matter (see generally Rosenbaum v City of New York, 8 NY3d 1, 10-11 [2006], quoting Brown v City of New York, 95 NY2d 389, 393 [2000]; see also Cook v Maine-Endwell Cent. School Dist., 236 AD3d 1167, 1169 [3d Dept 2025] [noting that the primary purpose of a notice of claim — to provide a municipal corporation with notice to allow for an efficient, timely investigation — was satisfied in that case]; Fontaine v City of Amsterdam, 172 AD3d 1602, 1603 [3d Dept 2019] [upholding Supreme Court's denial of a motion to dismiss where the notice of claim had not specified certain claims but nevertheless identified possible culpable conduct]).
On a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7), the Court must liberally construe the pleading, insofar as it must accept the facts as alleged in the Verified Complaint as true, accord Plaintiffs the benefit of every possible favorable [*4]inference, and determine only whether the facts as alleged therein fit within any cognizable legal theory (see Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141 [2017], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994], see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 175 [2021], quoting Leon, 84 NY2d at 87-88). However, allegations consisting merely of bare legal conclusions are not entitled to such consideration (see Connaughton, 29 NY3d at 141-42, quoting Simkin v Blank, 19 NY3d 46, 52 [2012]). Dismissal under CPLR 3211 (a) (7) is warranted if Plaintiffs fail to assert facts in support of an element of the claim or if the factual allegations and inferences to be drawn therefrom do not allow for an enforceable right of recovery (see Connaughton, 29 NY3d at 142; see also Horowitz v Fallon, 204 AD3d 1177, 1178 [3d Dept 2022]). Nevertheless, the Court's sole criterion is whether the pleading states a cause of action (see People v Coventry First LLC, 13 NY3d 108, 115 [2009], quoting Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001]). If the facts alleged within the four corners of the pleading manifest any cause of action cognizable at law, a motion for dismissal will fail (see Coventry First LLC, 13 NY3d at 115, quoting Polonetsky, 97 NY2d at 54; see also Shephard v Friedlander, 195 AD3d 1191, 1192 [3d Dept 2021] ["On such a motion, the court must determine 'whether, from the pleading's four corners, factual allegations are discerned which taken together manifest any cause of action cognizable at law'"] [citation omitted]).
To allege a cause of action for assault, a plaintiff must demonstrate that the defendant intentionally placed them in apprehension of imminent harmful or offensive contact (see Calkins v Dernlan, 234 AD3d 1088, 1090 [3d Dept 2025], quoting A.M.P. v Benjamin, 201 AD3d 50, 56 [3d Dept 2021]; see also Rivera v State of New York, 34 NY3d 383, 389 [2019], quoting Jeffreys v Griffin, 1 NY3d 34, 41 n 2 [2003], citing Wende C. v United Methodist Church, NY W. Area, 4 NY3d 293, 298 [2005] [discussing battery]).
Battery exists where a person intentionally touches another without the latter's consent (see Wende C., 4 NY3d at 298; see also Cicci v Chemung County, 122 AD3d 1181, 1183 [3d Dept 2014] ["A battery occurs where a defendant intentionally engages in offensive bodily contact without plaintiff's consent"] [internal quotation marks and brackets omitted], lv dismissed in part and denied in part, 25 NY3d 1062 [2015]).
To maintain a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that the alleged conduct was extreme and outrageous, and that the alleged perpetrator acted with the intent to cause severe emotional distress or with a disregard for the substantial probability that their conduct would cause severe emotional distress (see Chanko v Am. Broadcasting Companies Inc., 27 NY3d 46, 56 [2016], quoting Howell v New York Post Co., 81 NY2d 115, 121 [1993]). Moreover, a plaintiff must establish a causal connection between the conduct alleged and the injury itself (i.e., severe emotional distress) (see Chanko, 27 NY3d at 56, quoting Howell, 81 NY2d at 121). Liability exists only where the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency (see Chanko, 27 NY3d at 56, quoting Howell, 81 NY2d at 121). In this regard, the conduct alleged must be regarded as atrocious and utterly intolerable in a civilized community (see Chanko, 27 NY3d at 56, quoting Howell, 81 NY2d at 121; see also Loch Sheldrake Beach & Tennis Inc. v Akulich, 141 AD3d 809, 814 [3d Dept 2016] [discussing the elements of the claim], lv dismissed 28 NY3d 1104 [2016]; Hyman v Schwartz, 127 AD3d 1281, 1283-84 [3d Dept 2015] [same]; Cusimano v United Health Servs. Hosps., Inc., 91 AD3d 1149, 1152 [3d Dept 2012] [same], lv denied 19 NY3d 801 [2012]).
A cause of action for negligent infliction of emotional distress requires the plaintiff to show a breach of a duty owed to them which unreasonably endangered their physical safety or caused them to fear for their own physical safety (see Calkins, 234 AD3d at 1089-90, quoting Doe v Langer, 206 AD3d 1325, 1331 [3d Dept 2022] [internal quotation marks omitted]; see also Dolgas v Wales, 215 AD3d 51, 56-57 [3d Dept 2023], lv denied 41 NY3d 904 [2024], rearg denied 42 NY3d 959 [2024], lv denied sub nom. Cloonan v Wales, 41 NY3d 904 [2024]). As relevant here, school districts have a duty to adequately supervise their students, and the standard of care applicable to a school's oversight of its students is that degree of supervision which a parent of ordinary prudence would undertake in comparable circumstances (see Renwick v Oneonta High School, 77 AD3d 1123, 1124 [3d Dept 2010], quoting Mirand v City of New York, 84 NY2d 44, 49 [1994]).
A plaintiff asserting a common-law claim for false imprisonment must establish that the defendant intended to confine the plaintiff, the plaintiff was conscious of the confinement and did not consent to such confinement, and the confinement was not otherwise privileged (see Martinez v City of Schenectady, 97 NY2d 78, 85 [2001]; see also Parvi v City of Kingston, 41 NY2d 553, 556 [1977], quoting Broughton v State of New York, 37 NY2d 451, 456-57 [1975]; Barkley v Lisbon Cent. School Dist., 220 AD3d 1089, 1090 [3d Dept 2023], quoting Guntlow v Barbera, 76 AD3d 760, 762 [3d Dept 2010], appeal dismissed 15 NY3d 906 [2010]).
Finally, a school district, like any other employer, may be held vicariously liable under the doctrine of respondeat superior for a tort committed by an employee during the course of the performance of their duties (see Mary KK v Jack LL, 203 AD2d 840, 841 [3d Dept 1994], citing Murray v Watervliet City School Dist., 130 AD2d 830, 830-31 [3d Dept 1987]). Liability for respondeat superior, however, does not lie where the tortfeasor committed a tort outside of the scope of their employment that was wholly personal in nature and unrelated to the furtherance of the school district's business (see Murray, 130 AD2d at 830-31 [citation and quotation marks omitted]; Mary KK, 203 AD2d at 841). 
Liberally construing the Verified Complaint and according Plaintiffs the benefit of every possible favorable inference, the Court finds that the facts alleged manifest the five stated causes of action as against Barber and Johnson, given their direct involvement in the incident and the nature of the facts as presented. Defendants claim that the causes of action relating to assault, battery, and intentional infliction of emotional distress must be dismissed in their entirety at this very early stage in the litigation because Plaintiffs cannot establish the element of intent inherent in these claims. However, intent is a mental operation that can be inferred from the facts and circumstances and ascertained by considering circumstantial evidence (see Staples v Sisson, 274 AD2d 779, 781 [3d Dept 2000]). Given the facts as alleged in the Verified Complaint and the liberal construction that must be afforded to a pleading on a motion to dismiss, the Court finds that the Verified Complaint is not defective insofar as intent can be inferred and ascertained from the facts and circumstances as described by Plaintiffs. Defendants point to the Parents' 50-h hearing testimony to claim that Plaintiffs cannot prove intent, but the Court's role on a motion to dismiss is to ascertain whether the facts as alleged in the pleading fit within a cognizable legal theory. In this regard, the Court is limited to an examination of the Verified Complaint to determine whether Plaintiffs stated a cause of action, the language of CPLR 3211 (c) notwithstanding (see Miglino v Bally Total Fitness of Greater New York, Inc., 20 NY3d 342, 351 [2013]). Even when applying CPLR 3211 (c), it is entirely reasonable to interpret the language cited by Defendants to mean that Todd R. did not know what was in the minds of the individual [*5]defendants when they were restraining B.R. As in Miglino, this case is not currently in a posture to be resolved on a motion to dismiss (see id.). As a result, the Court denies this branch of Defendants' motion.
Defendants also seek to have all claims dismissed as against the Superintendent, the Principal, and Prabhakaran, arguing that Plaintiffs failed to state any claims against them. The Court agrees insofar as Plaintiffs' stated causes of action involve Johnson and Barber rather than the Superintendent, the Principal, and Prabhakaran. The Court, however, finds that Plaintiffs have alleged facts within the four corners of the pleading tending to manifest a claim against these three defendants. Specifically, Plaintiffs allege in the Verified Complaint that the Superintendent, the Principal, and Prabhakaran owed a duty of care to B.R. due to his developmental issues yet failed to timely inform the Parents of what happened to B.R. that day. This delay, according to Plaintiffs, resulted in B.R. not receiving immediate medical treatment. Thus, the facts — as alleged in the Verified Complaint, which must be liberally construed at this early stage in the litigation — manifest a claim sounding in negligence (see generally Nellenback v Madison County, 2025 NY Slip Op 02263, 1 [Ct App Apr. 17, 2025] [discussing that a plaintiff bringing a cause of action for negligence must allege duty, breach, causation, and damages]; Moore Charitable Found. v PJT Partners, Inc., 40 NY3d 150, 157 [2023] [same]). As a result, the Court grants in part this branch of Defendants' motion insofar as the five stated causes of action as alleged against the Superintendent, the Principal, and Prabhakaran are hereby dismissed, but denies in part the branch of this motion as it relates to the claim sounding in negligence.
To the extent Defendants seek dismissal of the claim of intentional infliction of emotional distress, the Court grants the branch of Defendants' motion and dismisses this claim as against the School District itself (see Matter of Lynch v State, 2 AD3d 1002, 1003 [3d Dept 2003]).
Finally, Plaintiffs concede that punitive damages may not be recovered against the School District (see generally Mackey v Lawrence Union Free School Dist., 225 AD3d 683, 686 [2d Dept 2024]) but nevertheless seek punitive damages as against the individual defendants. Generally, "[t]he imposition of punitive damages generally requires conduct that evidences a high degree of moral culpability, is so flagrant as to transcend simple carelessness, or constitutes willful or wanton negligence or recklessness so as to evince a conscious disregard for the rights of others" (Evans v Stranger, 307 AD2d 439, 440 [3d Dept 2003]). However, Defendants correctly point out that "a municipality is not liable for punitive damages flowing from its employees' misconduct in the absence of express legislative authorization to the contrary" (Krohn v New York City Police Dept., 2 NY3d 329, 336 [2004]). Likewise, Plaintiffs are not entitled to attorneys' fees in the absence of malice (Mastic Fuel Serv. v Van Cook, 55 AD2d 599, 599 [2d Dept 1976] ["Attorneys' fees are recoverable as a measure of damages in tort actions where malice is an element of the tort"]). As a result, the Court grants this branch of Defendants' motion.

II.
Defendants move for a protective order either striking Plaintiffs' demand for the disclosure of the videos or limiting the extent to which they ought to be disclosed and preventing re-disclosure. Defendants also move for an order restricting Plaintiffs' ability to comment [*6]publicly about the lawsuit. Plaintiffs oppose. The Court addresses each claim in turn.
As relevant here, protective orders are governed by CPLR 3103. That provision allows courts to issue, whether sua sponte or on motion by one of the parties, orders preventing abuse during the discovery process (see CPLR 3103 [a]). Courts may deny, limit, condition, or regulate the use of any discovery device (id.). Orders under this provision are meant to protect against unreasonable annoyance, expense, embarrassment, disadvantage, or prejudice to any person or the courts (id.). Courts have broad discretion in fashioning appropriate remedies where abuses are threatened under subdivision "a" of this provision (see Lipin v Bender, 84 NY2d 562, 570 [1994]).
Defendants cite to, inter alia, the Family Education Rights and Privacy Act in seeking a protective order concerning the videos, claiming that disclosure of the videos at issue in this case would violate the privacy rights of non-party students appearing in said videos. This federal law — codified at 20 U.S.C. § 1232g — prohibits public school districts from releasing or disclosing the records of students unless written consent is obtained from an appropriate parent or guardian, or an order is issued mandating their disclosure (see Matter of Newfield Cent. School Dist. v New York State Div. of Human Rights, 66 AD3d 1314, 1317 [3d Dept 2009]). Plaintiffs oppose, arguing that the non-party students are "merely background" and thus not protected in this instance by federal law. Given the Court's broad discretion under CPLR 3103 (a), the Court denies in part Defendants' motion for a protective order, to the extent Defendants seek an order striking Plaintiffs' request for disclosure, but grants Defendants' motion in part, to the extent of granting disclosure subject to certain conditions. Specifically, the Court orders that the videos be disclosed to Plaintiffs' counsel for purposes of this lawsuit under the following conditions:
• Copies of the videos are to be disclosed to Plaintiffs' counsel solely for the purposes of this action, and for no other purpose;
• Counsel for Plaintiffs are ordered to take reasonable steps in ensuring that the videos are kept in a confidential manner and inaccessible to anyone other than counsel and their legal staff;
• The videos are not to be reproduced, distributed, or disseminated to anyone for any reason or under any circumstances, including for Plaintiffs;
• Plaintiffs are to be afforded reasonable access to the videos for purposes of viewing them in person within the law office of Plaintiffs' counsel and under the supervision of Plaintiffs' counsel;
• Under no circumstances are Plaintiffs to be given copies of the videos, nor are they to record or be allowed to record the videos using any device, including a smartphone; and
• Counsel for Plaintiffs may grant their legal staff access to the videos to the extent necessary for prosecuting the lawsuit, but said staff are also subject to the requirements set forth in this Decision and Order.
Any other issues arising from the disclosure of these videos — including the return or destruction of said videos upon conclusion of the lawsuit — will be brought to the Court's attention at that time. The Court declines to address the consequences for violating these terms, except to remind the parties that the Court has broad authority in crafting remedies for violations of CPLR 3103 (c) (see Lipin, 84 NY2d at 570).
Finally, Defendants seek to limit Plaintiffs' speech concerning the lawsuit, citing, inter [*7]alia, certain social media posts made by the Parents concerning the litigation and the Parents' purported conversations with local news media. Defendants claim such communications are "inappropriate," "false," and "inflammatory," and ask the Court for an order enjoining Plaintiffs from further communication regarding the lawsuit. Defendants also ask that Plaintiffs be enjoined from further communication with Defendants or employees of the School District.
Defendants cite to several instances concerning Todd R.'s communications on social media and in other contexts but neglect to include in their memorandum in support any legal authority discussing the "well-settled" principles governing the depravation of a person's fundamental constitutional right to free speech under these circumstances. As such, the Court denies this branch of Defendants' motion without prejudice.

CONCLUSION
Based on all of the foregoing, it is:
ORDERED, that Defendants' motion for an order partially dismissing the Verified Complaint is GRANTED in part and DENIED in part; and it is further
ORDERED, that the causes of action for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment are DISMISSED as asserted against the Superintendent, the Principal, and Prabhakaran; and it is further
ORDERED, that the cause of action for intentional infliction of emotional distress is DISMISSED as asserted against the School District; and it is further
ORDERED, that the claims for punitive damages and attorneys' fees are DISMISSED; and it is further;
ORDERED, that Defendants' motion for a protective order is GRANTED in part and DENIED in part; and it is further
ORDERED, that the parties are to abide by the terms and conditions set forth in this Decision and Order regarding the disclosure and re-disclosure of the videos relevant to this lawsuit; and it is further
ORDERED, that Defendants' motion for an order precluding Plaintiffs from discussing the lawsuit publicly is DENIED.
This constitutes the Decision and Order of this Court. The Original Decision and Order shall be uploaded onto the New York State Court Electronic Filing system. Upon entry, counsel for Defendants shall promptly serve Notice of Entry on all parties entitled to such notice.
Dated: December 17, 2025
Troy, New York
Hon. Noel Mendez
Papers Considered:
1. Motion papers in support and opposition submitted electronically as part of motion sequence one;
2. Motion papers in support and opposition submitted electronically as part of motion [*8]sequence two.